UNITED STATES DISTRICT COURT
*For the*
DISTRICT OF NEBRASKA 8:10cv195

Thomas R. Zakrzewski,

Plaintiff,

Vs

United States; United States Court of Appeals for the Eighth Circuit; United States District Court for the District of Nebraska; State of Nebraska; Nebraska State Bar Association; Nebraska Supreme Court; Holt County, Nebraska; Madison County, Nebraska; Lancaster County, Nebraska; O'Neill, Nebraska; Barack H. Obama; George W. Bush; William J. Clinton; Eric Holder; Deborah Gilg; Michael Heavican; Jon Bruning; FBI; Merton Dierks; Dave Heineman; James G. Egley; Dan Fullner; Ann Flood; Richard Petersen; James Kube: Mark Kozisek; Joseph M. Smith; John Gerrard; C. Thomas White; Nick Caporale; John F. Wright; William Connolly; Kenneth C. Stephan; Michael McCormak; Lindsay Miller-Lerman; Dennis Keefe; Gary Lacey; Terrell R. Cannon; Melissa A. Wentling; Jan W. Sharp; Dennis G. Carlson; Janet Reno; Kent L. Frobish; Ronda F. Raff; Omaha World Herald; Lincoln Journal Star; Norfolk Daily News; Ronald Temple; Ben Matchett; Robert Bartle; Thomas K. Massey; Ben Nelson; Mike Johans; Corey Mayberger, Larry Wannamaker; Forrest Peetz; Thomas P. Herzog; Clark Grant; Thomas Shanahan; Mark Albin; Alan Brodbeck; Jeffre Cheuvront; Jonathan Crouch; Charles Diers; Mary C. Gerdes; Fredric H. Kaufman; D. Steven Leininger; Mandy Strigenz; Wade Thomas, Jr; Joseph F. Bataillon; William Cassel; Evan F. Zakrzewski; Thomas L. Zakrzewski, Jr.; Sharron A. Zakrzewski; Natalie Ethington; Jess Ethington; John V. Hendry; Leslie Reed; Richard S. Arnoold; Lori Pilger; TeleCare Recovery Center at Sarpy; and Jane and John Doe 1 through 1,000.

Defendants.

Sworn Pro Se Complaint with self proving attachments for Remedial and Injunctive Relief and Demand for Jury Trial

FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA
10 MAY 14 PM 2:41
OFFICE OF THE CLERK

COUNTS ONE & TWO

COMES NOW the plaintiff and complains against the defendants as follows. The defendants have entered into a criminal agreement to operate the State of Nebraska as a criminal enterprise in violation of the Racketeering Statutes (Count 1) and the United States Constitution. (Count 2) The State of Nebraska has committed treason against the United States of America. The current President of the United States and the last two Presidents have turned the State of Nebraska into a criminal enterprise to cover up crimes committed by members of the Nebraska State Bar Association, U.S. District Court for the District of Nebraska , FBI and the Nebraska Supreme Court.

Plaintiff further alleges that the defendants have entered into a criminal agreement to violate the plaintiff's human rights. The defendants have entered into a criminal agreement to murder the plaintiff by poisoning the plaintiff with forced medications that the plaintiff does not need. These chemicals are forcefully injected into the plaintiff without plaintiff's consent and against plaintiff's will. All chemicals are forced into the plaintiff as a result of an intentional misdiagnosis of the plaintiff as having delusions of persecution. This misdiagnosis is to cover up the crimes alleged herein. In the last ten years the defendants have forced the plaintiff to take over 150 injections of foreign substances and over 5,000 pills based on this intentional misdiagnosis.

There is a reason the defendants are forcing chemicals into the plaintiff that are not needed by the plaintiff. That reason is to shorten the life span of the plaintiff as much as possible. The plaintiff has already been murdered by these defendants because plaintiff will live a shortened life as a direct result and intention of the defendants. Plaintiff has already developed one tumor as a result of the forced chemicals. The persecution is real and the plaintiff proves it by further alleging as follows.

STATE OF NEBRASKA )
) ss.
COUNTY OF SARPY )

CHAPTER ONE
(The Crimes)

1. The judiciary in Nebraska has so corrupted the state government in Nebraska the state cannot be repaired. The state must be dissolved and partitioned to protect the Union of States from further contamination. Criminals now hold the office of the U.S. Attorney for the District of Nebraska, Attorney General for the State of Nebraska, Governor of Nebraska, all members of the Nebraska Supreme Court & Court of Appeals, all judges in Lancaster, Madison and Holt Counties and other various state and local governmental positions that are important to the safety of the people of the United States of America. This includes U.S. Senators Ben Nelson and Mike Johanns. This allegation has been true since March, 1997. All the individuals mentioned in this paragraph have in their official and individual capacities engaged in racketeering activities, torture, human rights violations and crimes against nature itself. All individuals mentioned in this paragraph are a serious threat to the safety of all Americans.

2. The office of the President of the United States of America has been corrupted since William Jefferson Clinton as a result of the activities of the Nebraska State Bar Association (NSBA) and the Nebraska judiciary and is currently held by a criminal of the worst sort. Barack Obama , while serving as Commander and Chief of the armed forces and brave men and women are dying in Iraq and Afghanistan for my freedom, is engaged in a conspiracy with federal, state and private persons to falsely imprison me, torture me and violate my human rights by denying me proper medical treatment. Obama is acting as a criminal because of my work as an Officer of the Federal Court for the District of Nebraska and United States 8th Circuit Court of Appeals.

I am also a whistleblower concerning the corruption mentioned in paragraph 1. The Union is being corrupted and must be saved. Normal, healthy people do not engage in the type of behavior alleged and proven in this document with attachments. Normal, healthy governments do not engage in the type of behavior alleged and proven in this document with attachments. The office of the President has been destroyed and is now a serious threat to the safety of all Americans. Freedom, justice, truth, due process and everything this Country was founded upon are under attack by the office of the President.

3. The office of the Attorney General for the United States of America has been corrupted since the office was held by Janet Reno and Eric Holder was the number 2 person at the Justice Department. Under the watch of Bill Clinton, Janet Reno and Eric Holder did engage in racketeering activity, torture and human rights violations by depriving me of proper medical treatment. Reno and Holder engaged in this evil behavior to cover up the corruption alleged and proven in this document with attachments. The office of the U.S. Attorney General has been destroyed and is now a serious threat to the safety of all Americans.

4. Clinton, George W. Bush and Obama have corrupted the press in the state of Nebraska. I hereby specifically mention the Omaha World Herald, Lincoln Journal Star, Norfolk Daily News, Holt County Independent and various radio and television stations. This allegation has been true since March, 1997. This action amounts to treason against the United States of America. The evil doers involved must be charged, tried and convicted of treason against the United States of America. The harshest punishment possible for treason must be administered to deter others from engaging in the same behavior. We must protect future generations from the behavior that is alleged and proven in this document with attachments.

The Founding Fathers knew a free press was so important to a free country and honest government that they added the 1st Amendment to the Bill of Rights. We cannot allow members of the press such as Leslie Reed, Lori Pilger, Kent Warnake, Tom & Jerry Miles and Scott & Gil Posey to engage in a conspiracy with the government to cover up the type of behavior alleged and proven herein.

5. The Federal Court for the District of Nebraska, all judges and magistrates, have been corrupted since March, 1997. All pose a serious threat to the safety of all Americans. At least four (4) members of the 8th Circuit Court of Appeals have been corrupted by the behavior mentioned herein. All four (4) are now a serious threat to the safety of all citizens of the United States of America. All courts in the United States of America are under attack in an attempt to cover up the corruption mentioned in this document. The Judicial Branch of the United States Government is being destroyed.

6. What happened is simple; sixteen (16) years of malicious prosecution. In October of 1993, I filed a federal civil rights action as an attorney that affects the rights of every divorced non-custodial parent in the U.S. and the liability of every lawyer in the U.S. My client was also my brother. There is nothing unethical about representing your family. Any claims to the contrary are an attempt to discredit me and cover up the corruption proven herein.

A private practice attorney, Forrest Peetz, who was a named defendant, immediately filed a complaint with Dennis Carlson, NSBA Counsel for Discipline on November 1, 1993. In this complaint Forrest Peetz did knowingly make false statements of fact about his own behavior on June 1, 1993. Peetz claimed he simply told a former client, Ronda Raff and my client's ex-spouse, to contact the local sheriff for help in removing my client's child from his control. Peetz also claimed he had been maliciously included in the lawsuit because he acted as Raff's divorce attorney.

7. In September of 1994, I received the police reports of the Deputy Sheriff Alan Rowse, Sheriff Charles Fox and the sworn testimony of the Sheriff and the County Attorney Thomas Herzog. The police reports of Rowse and Fox claimed Peetz personally contacted the law enforcement officers and requested that they remove the child from my client. No police report mentioned any law enforcement contact with Peetz' client. The sworn testimony of the Sheriff Charles Fox as well as the sworn testimony of the County Attorney Thomas Herzog, stated that they had no contact with Peetz' client. Herzog and Fox swore under oath that Peetz contacted them, either by phone or in person, and accused my client of violating the divorce decree and requested that they use police force to remove the child from my client.

8. In September of 1994, I and my client also first learned by documents supplied by the Sheriff's department that on June 2, 1993, a day after Peetz had the Holt County

Sheriff remove the child from my client, Peetz' client alleged serious child abuse allegations against my client and his family. I have attached hereto a copy of the words allegedly spoken by Raff to Peetz about the abuse allegations. Please read the alleged telephone message. Now you tell me if any honest person would believe the words were spoken and written down in good faith knowing that Peetz' client kept the words secret from my client for over eighteen (18) months and within days returned Heath to the control of my client and his family with no questions asked. Peetz also kept the words secret, even from the Counsel for Discipline between November 1, 1993, and March, 1995. Peetz never investigated the allegations and never notified the proper authorities in Nebraska. The Holt County Sheriff's office also kept the allegations secret, did not investigate the allegations and never turned them over to the Department of Social Services in Nebraska. This is not normal, healthy behavior.

The allegations were obviously made to be used in case I carried through with a threat I made on June 1, 1993, to Peetz and the law enforcement officers to sue them if they used police force to remove the child from my client. That is after all when the allegations finally came to light. By keeping the allegations secret the defendants themselves proved the allegations were made to harm my client and not to protect the child.

I also had a lot of other circumstantial evidence that the allegations were false and that Peetz had directed Raff to make the allegations Such as the fact that Peetz had engaged in similar behavior by lying to the Counsel for Discipline to get the NSBA to take action against me. Peetz clearly committed the crime of false reporting when he claimed to the Counsel for Discipline that he simply referred a former client to the Holt County Sheriff. Peetz used the NSBA complaint against me as a bargaining chip in the civil rights lawsuit. Peetz' attorney told me they would have the Counsel for Discipline discontinue his investigation of Peetz' allegations if I would dismiss Peetz from the civil rights case. Dennis Carlson, Counsel for Discipline, knew Peetz was using his complaint as a bargaining chip in the civil rights action. I will discuss other evidence later.

But upon learning of the abuse allegations I filed an affidavit with the District Court of Holt County seeking that Peetz and Raff be held in contempt for making the allegations of child abuse in bad faith in violation of the divorce decree. Peetz immediately filed another complaint against me with the Counsel for Discipline, yet Peetz continued to keep the telephone message attached hereto secret. I also claimed it was a violation of the divorce decree for Peetz and Raff not to tell my client Raff had made the allegations against him and his family.

9. I then immediately gave the discovery material from the law enforcement officials, i.e. the police reports and sworn testimony, to the Counsel for Discipline. I also filed a formal complaint against Forrest Peetz for committing the crimes of false reporting against me for lying to the Counsel for Discipline and extortion. The Counsel for Discipline dismissed Peetz' complaints against me but refused to charge Peetz with ethical violations for lying to the NSBA and then attempting to use his complaint as a bargaining chip in the federal civil rights action.

10. Peetz immediately appealed the Counsel for Discipline's dismissal of his complaints against me to the NSBA Third District Committee on Inquiry. I appealed the dismissal of my complaint against Forrest Peetz for committing the crimes of false reporting and extortion.

11. Upon receiving the NSBA file from Dennis Carlson, the Vice-Chairman of the Committee on Inquiry, Richard Seckman, then had contact with each of the three law enforcement officers involved. Seckman never told me he had such contact. Seckman and Peetz got the law enforcement officers to claim their police reports and prior sworn testimony was inaccurate.

In March, 1995, Sheriff Fox miraculously claimed he now had a memory of a phone conversation with Ronda Raff on June 1, 1993. Fox further alleged that he could now remember he had called Peetz twice on June 1, 1993, but only for information regarding the public divorce decree. The County Attorney, Thomas P. Herzog, also claimed his prior sworn testimony was inaccurate. Herozg now claimed he had a memory of calling Peetz three (3) times on June 1, 1993, but only for information concerning the public divorce decree and to inform Peetz the Sheriff had removed Heath from my client. Peetz miraculously remembered that his secretary kept a phone log of all incoming calls and produced the same to Seckman alleging five (5) contacts with Holt County law enforcement concerning the desires of his client.

12. On March 2, 1995, a criminal conspiracy to obstruct federal civil rights litigation and commit perjury was brought to completion. This criminal behavior has been covered up at my expense ever since. A sham hearing was held by the NSBA Third District Committee on Inquiry in the backroom of the law office of Mark Sipple, Chairman of the Committee. A cast of criminals was assembled to protect Peetz and all lawyers from liability for their civil rights violations.

Numerous lawyers acting as a jury were assembled. Peetz, Raff, Fox, Herzog and Rowse were summoned to give testimony against me. Although such a hearing is by rule non-adversarial, Richard Seckman insisted he act as prosecutor for Peetz. Sipple allowed this as well as allowing Peetz to be present for all the testimony of the witnesses. Dennis Carlson, Counsel for Discipline, was also present for all the testimony. Peetz would actually pass notes to Seckman when the witness would deviate from Peetz' new version of events. Seckman would then ask leading questions to inform the witness they were deviating from the new version and the witness would change their testimony.

The cast of criminals then testified that their police reports and prior sworn testimony was inaccurate and testified as I discussed earlier herein. The Committee then ruled that Peetz had not committed the crimes of false reporting and extortion, the abuse allegations were spoken in good faith and I would have had to concede the same had I contacted Raff and Peetz prior to filing my motion to have them held in contempt. I was allegedly reckless in my actions, which was the same as knowingly making a false statement of fact. I had also allegedly acted maliciously against Peetz. Formal ethical charges were filed against me with the Nebraska Supreme Court.

13. On March 20, 1995, I testified before the Third District Committee on Inquiry in my defense. I alleged that no honest person would believe that three (3) law enforcement officers had identical false memories of Peetz contacting them and requesting that police force be used to remove the child from my client. I argued it was clearly a conspiracy to commit perjury and obstruct justice. Besides, I argued, I relied on the police reports and sworn testimony to prove Peetz committed the crime of false reporting against me and it could not be said to be my fault that three (3) law enforcement officers can't accurately fill out police reports and sworn answers to interrogatories even with help from their attorneys.

I also argued that I could prove Peetz had the same law enforcement officers remove a child from another parent without a court order on an earlier date than June 1, 1993. I argued that Peetz had committed the crime of false reporting against my client on June 1, 1993, to get the law enforcement officers to remove the child.

But most importantly I argued that the fact that the Sheriff, Peetz and Peetz' client all kept the abuse allegations secret for eighteen (18) months proved that the allegations were not made to protect the child but to harm my client. I argued that nothing was done to investigate my client's parenting of Heath, which was conceding the abuse allegations were false. All the individuals involved knew the child was not in danger while with my client and his family. Their behavior clearly indicated this fact. Normal, healthy people do not make the type of abuse allegations attached hereto and then keep them secret from their ex-spouse. Normal, healthy lawyers do not receive the type of information from their client that is attached hereto, keep it secret and not act on it. Normal, healthy police officers do no receive the type of abuse allegations attached hereto and not investigate the same.

In fact they all committed a crime by not acting to protect a child they claimed was being abused. (Note: Raff did testify on March 2, 1995, that she had just recently received a call from Marge Ziska from the Dept. of Social Services about the allegations. According to Raff, Ziska claimed someone had "sat on" the abuse allegations and they would not be investigated. On March 2, 1995, Deputy Sheriff Rowse testified that he turned the allegations over to the Dept. of Social Service approximately one week after receiving the allegations. One week later during a deposition Rowse changed his story and stated he did not know if the allegations ever got turned over to the Dept. of Social Services.)

On March 20, 1995, I testified that I had my client immediately call Raff when we learned of the abuse allegations. According to my client, Raff told him she was not suppose to talk about the allegations. I also testified that immediately upon receiving notice of the allegations I had my client go into the Dept. of Social Services and ask if they had ever been notified of the allegations. According to my client, the Dept. of Social Services had no idea what he was talking about.

On March 20, 1995, I testified that I was the only one to ever investigate the abuse allegations. I interviewed the Grandparents, Aunts, Uncles, etc. Even non-related third parties were questioned by me. No one had ever heard of the allegations, never saw the child bruised and certainly never witnessed any urinating bed humping by the child. I argued no reasonable trial attorney would concede the abuse allegations were true given the direct evidence I had that the abuse allegations were false. The circumstantial evidence that the abuse allegations were false and their was a conspiracy between Raff, Peetz and Holt County law enforcement to keep the allegations secret was too powerful to ignore. On behalf of my client I alleged what the evidence proved. The abuse allegations were made to be used in case I filed a lawsuit for their actions on June 1, 1993.

14. In approximately July, 1995, the U.S. District Court Judge granted summary judgment in favor of the civil rights defendants. The federal district court knew what the NSBA was doing and basically agreed to help. The court accepted the NSBA Committee's bizarre position that three (3) law enforcement officers did in fact have identical false memories for two (2) years, including on the day of the events, and their

police reports and prior sworn testimony was inaccurate. How the court could do this on summary judgment is a mystery to me. I had to appeal. I knew the court had gotten the facts wrong. I appealed to the United States Court of Appeals for the 8th Circuit.

At this point I must point out other acts by the federal district court clearly indicating bad faith. First, I was sanctioned $700.00 because the court claimed the defendants had no obligation to mail me their insurance policy. The magistrate's conclusion was that I was required to drive 100 miles to Omaha and pick up the insurance policy as it was "kept in the normal course of business".

The same magistrate recommended to the judge that the case be dismissed for failing to state a cause of action. The magistrate then mailed a copy of her recommendation to the NSBA without telling me she took such action. In the letter to the NSBA the magistrate's clerk stated this may help the NSBA with Peetz' compliant against me. The judge rejected the magistrate's recommendation. The case was not dismissed because I failed to state a cause of action. I don't think the magistrate saw fit to inform the NSBA her recommendation had been rejected! But clearly the federal court knew what the NSBA was doing.

Instead of being offended by the obstruction of the federal civil rights action, witness tampering and obvious perjury, the court encouraged the NSBA. The court clearly made it known the NSBA could intrude into the lawsuit and benefit from it. Later I will tell you how successful the NSBA was in obstructing my prosecution of the lawsuit. The 8th Circuit Court of Appeals actually made a material factual mistake by accident that changed the outcome of the case.

(Note: Let's get serious here. You can't tell me some fourteen (14) years later that no investigative reporter, police officer, FBI agent, Governor, Attorney General, President, judge, lawyer, Church, my parents, client, etc. can't figure out that the 8th Circuit made a factual mistake that changed the outcome of the case and the Nebraska Supreme Court made the same mistake on purpose to cover up the obstruction of justice. I am clearly being persecuted by the most powerful position in the United States Government; the office of the President.)

(Note: At this point I must mention the misfit Bill Dittberner. About this time Bill told me that he watched the cops park their car at the Humphrey Fire Station. The cops allegedly walked the block to my house and peeked into my windows. Looking back I can now see that this was the beginning of my nervous breakdown. I knew Thomas Shanahan, U.S. District Court Judge, had intentionally misstated the facts so he could rule in favor of the civil rights defendants. I knew my safety was literally in danger because of my appeal to the 8th Circuit court of Appeals. I began toying with ways to catch the peeping Toms. Many ideas came to my mind. I would act on some, others I discounted. Perhaps here I made a mistake with my choice.)

(Note: Special Prosecutor Joe Smith has gotten Bill Dittberner to deny under oath that he told me what is alleged above but I can easily prove Smith had Bill commit perjury on another day. Smith really is a threat to the safety of every American. Smith must be charged, tried and convicted of treason, racketeering activity, conspiracy to commit perjury, human rights violations and crimes against nature. Smith has had at least seven (7) psychiatrists claim I am delusional about the behavior I allege and prove in this document with attachments. The psychiatric profession is being used by the government to falsely imprison whistleblowers.)

15. In March, 1996, there was a hearing ordered by the Nebraska Supreme Court in front of Referee Ronald Lahners. Peetz and Raff were again called to testify. Peetz and Raff again changed their sworn testimony. But of importance here is that I called Marge Ziska from the local Nebraska Department of Social Services to testify. Ziska had no idea why she was called to testify, never heard of the abuse allegations, never called Raff about the abuse allegations and was actually dumbfounded to be there.

Peetz finally produced the telephone message that is attached hereto for the first time. Also of importance is that the Sheriff, Deputy Sheriff and County Attorney did not testify. I simply put the police reports and sworn answers to interrogatories on as my evidence. Later herein when I write about the Nebraska Supreme Court's decision you must ask yourself how did the court come up with the new version of events that had been part of the sham hearing before the Third District Committee on Inquiry. The court clearly went outside the record before the Referee to get the new version. The Nebraska Supreme Court is a very devious institution that is clearly a threat to every American.

The Referee actually listened to my testimony and came to the conclusion that I had enough direct evidence to prove the abuse allegations were false. What the Referee would not do however is come to the obvious conclusion that Peetz had a pattern of committing the crime of false reporting. The Referee also refused to conclude that the fact that Peetz, Raff and the Sheriff kept the allegations secret proved a conspiracy to hide the allegations from my client until needed in the civil rights action. The Referee decided I violated the code of ethics. The Referee actually stated I could not reason in a logical manner. Former state senator Ernie Chambers would later tell me that the NSBA has never lost a case in Nebraska. In the seven (7) years I was an attorney I never lost a jury trial.

16. In July, 1996, the 8th Circuit Court of Appeals issued its' decision in the case. My appeal of a summary judgment to the appellate court is de novo meaning the appellate court reviews the evidence in its entirety and comes to its own factual conclusions. The 8th Circuit agreed with me that the U.S. District Court had gotten the facts wrong. The 8th Circuit came up with a set of facts more consistent with the undeniable truth that three (3) law enforcement officers cannot have identical false memories just when it's convenient for their case. The court also relied on the circumstantial evidence I had amassed proving the Third District Committee on Inquiry held a sham hearing.

The 8th Circuit implicitly, but clearly, called Peetz, Fox and Herzog liars and criminals. The 8th Circuit wrote as a factual conclusion the following.

"The same day, the ex-wife's attorney, Forrest Peetz spoke with County Sheriff Fox, accusing [Evan] Zakrzewski of refusing to return the child in violation of the divorce decree and requesting assistance in returning the child to the mother".

This is clearly stating that Peetz lied to the Counsel for Discipline, the Third District Committee on Inquiry, during his deposition and before the Referee when he told his versions of his actions on June 1, 1993. In other words, the 8th Circuit stated that Peetz put pen to paper at least seven (7) times and testified under oath at least three (3) times and never told the truth once!

Unfortunately the 8th Circuit also made a serious but I suspect accidental factual mistake that doomed our case. The record was complex by the time we got to the 8th Circuit. The mistake was made because the NSBA had so polluted the record it was

confusing. But the 8th Circuit wrote that: "On his way home from the sheriff's office, [Evan] Zakrzewski encountered deputies Rowse and Fernau, who approached his vehicle from the opposite direction".

This is not how the events of June 1, 1993, unfolded. What really happened, and I have attached the police reports of Fox and Rowse hereto to prove it, is that before noon Fox called Sharron Zakrzewski with a threat that the child had to be returned. Sharron then contacted Evan who went to the Sheriff's office and confronted Fox. Evan made it clear he was not going to voluntarily give the child back. Evan wanted to spend time with his son. Evan then called me for advice. I called Judge William Cassel who told me the following: "I will tell you the same thing I told Peetz, file your motion". I then called the law enforcement officials and Peetz with Evan's side of the story. I threatened to sue if the police interfered in Evan's parent-child relationship without a court order. At 4:00 p.m deputies Rowse and Fernau then went to Sharron's house making threats. Sharron contacted Evan who tried to hide from the deputies. The deputies tracked Evan down. Evan returned the child without fighting with the deputies. Evan clearly had to use his own child as bail to avoid going to jail.

The 8th Circuit also implicitly, but clearly, called County Attorney Herzog a liar. Herzog claimed that he was the one who contacted Judge Cassel and the Judge directed him to tell the Sheriff to tell Evan to give the child back to Peetz' client. The 8th Circuit looked at the affidavit of Judge Cassel and concluded that the Judge "issued no orders".

(Note: I believe Peetz was in Herzog's office when the call to the Judge was made. Their offices are right across the street from each other. In his answer to my interrogatories Herzog stated that Peetz contacted him either in person or by phone. The 8th Circuit knew none of this because I was the attorney. I did not want to file an affidavit in the case and become a witness. Besides, I knew I could prove Judge Cassel issued no Orders with Cassel's affidavit and the Code of Judicial Responsibility.)

17. After the 8th Circuit decision came out in July, 1996, the U.S. District Court for the District of Nebraska, NSBA, Peetz, Herzog, Fox and their attorneys knew they were in trouble. All knew I could now prove the Third District Committee on Inquiry had solicited perjury and obstructed justice. They had all engaged in racketeering activity. I could use the 8th Circuit decision to prove it. All hell broke loose in my life that would cause me to have a life changing nervous breakdown, become addicted to meth and begin a course of conduct meant to mislead the FBI who had now been enlisted by the racketeers to cover up for the state of Nebraska.

At this time, July, 1996, I started contacting the FBI myself to tell them what was happening. They refused to respond to my letters. In fact before it was over I would call the FBI office, identify myself, and the FBI would hang up on me.

The FBI and the Nebraska State Patrol began a series of stings against me that are so evil only the devil could have been on their side. They had a meth dealer show up at my office when I was very vulnerable and unstable. The meth dealer started giving me Meth "up front" without me having to pay for it. The FBI would then play vicious mind games with me in an effort to get me to have a serious nervous breakdown. It worked. Even my family would end up betraying me to cover up the behavior I engaged in while mentally ill. I have since healed myself the best I can despite the government's best efforts.

(Note: Getting a little ahead of myself I must mention Kirby Sander. On July 3, 1997, Kirby, who I knew socially, was getting gas at RB's gas station in Humphrey, NE. The station is across the street from the apartment I was living in at the time. Kirby watched a man watching my apartment. Kirby then came over to my apartment to tell me someone was spying on me. Kirby had seen my curtains move so he knew I was home. I knew the FBI was spying on me so I refused to answer the door. I did not want to endanger Kirby. Kirby knocked for approx. 15 minutes.

On July 4, 1997, I was in Platte Center, NE when I ran into Kirby. Kirby asked me what I had gotten myself into and told me the story of the man spying on my apartment. Kirby also told me the man followed Kirby after he left my apartment and Kirby turned around and chased the man down. Kirby has testified to this before the Board of Mental Health in one of my commitment hearings that I will discuss in Chapter 2.

On July 15, 1997, I moved out of the apartment. My parents were there to help me. I took them across the street. I showed them the vacant building the FBI was hiding in when they would spy on me. I told my parents what was going on.)

18. On the ides of March, 1997, the Nebraska Supreme Court issued its' decision in <u>State of Nebraska, Ex rel, NSBA v. Thomas R. Zakrzewski,</u> 252 Neb. 38 (1997) Watch as I destroy the corrupted court's opinion with ease.

The court states: "It is apparent that respondent possessed no actual knowledge that Peetz told Rafff to file a child abuse allegation with the South Dakota DSS. Although respondent failed to discuss the allegations with either Raff or Peetz prior to signing the affidavit, the testimony of both at the disciplinary hearing makes it clear that Raff filed the report after she discovered bruises on Heath and not at the direction of Peetz. Despite his failure to question either Raff or Peetz or gather any direct evidence supporting his allegation, respondent signed the affidavit based on his belief that the circumstantial evidence in his possession supported his allegations."

In other words I was suppose to contact my client's ex-spouse and believe her that the child had been bed humping and urinating, bruised, and burned with cigarettes,. despite the direct evidence I had from all the people I had interviewed stating that the abuse allegations were false, they had never seen any bruises on the child, they did not witness any urinating bed humping by the child and the allegations were actually kept secret from them for eighteen (18) months! No wonder it is now thirteen (13) years later and not any member of the Nebraska Supreme Center has defended this opinion or stated they did not "fix" the case for the NSBA. Any trial lawyer reading this opinion would be able to tell the court's logic was flawed. I have had attorneys represent me since January, 1998, and none of them will publicly state that the Nebraska Supreme Court's logic is so flawed it is actually ridiculous.

It is also very, very well established law that conspiracies, by their very nature, are conducted in secret and must generally be proven by circumstantial evidence. There are actually hundreds and hundreds of cases stating this proposition of law. It is the law in every jurisdiction of the United States of America. The Nebraska Supreme Court clearly lost its' objectivity because they are all members of the NSBA.

The court states that: "A hearing was had before a referee on March 14 and 15, 1996. In his defense, respondent argued that the circumstantial evidence he had at the time he signed the affidavit supported his allegation that Peetz directed Raff to file the

child abuse allegation. The evidence respondent referred to was essentially the following: (1) the South Dakota DSS letter addressing the abuse allegation that was copied to Peetz, (2) the fact that respondent had threatened Peetz with a federal civil rights action the day before the report was made (thereby providing motive), and (3) the three telephone calls Raff made to Peetz' office on June 1, 1993 (thereby providing an opportunity for Peetz to direct Raff's actions).

I have listed the evidence I had before the Third District Committee on Inquiry already. Clearly the court lied. What about the fact that Peetz, Raff and the Sheriff kept the abuse allegations secret, never investigated the allegations and thereby committed a crime by failing to protect a child they claimed was being injured? This is overwhelmingly powerful circumstantial evidence that the abuse allegations were made to harm my client and not to protect the child.

What about the fact that the Sheriff kept the allegations secret until they were disclosed eighteen (18) months later in the civil rights action? How the allegations were eventually used and brought to light is overwhelmingly powerful circumstantial evidence that the abuse allegations were made to be used in case I filed a lawsuit because the Sheriff used police power to remove the child from my client without a court order.

What about the fact that Peetz kept the phone message attached hereto secret until March, 1995, and never produced the same until March, 1996? Peetz filed a complaint with the NSBA on November 1, 1993, claiming he simply referred a former client to the Sheriff. Peetz filed a second compliant with the NSBA in September, 1994. Peetz purposely did not inform the Counsel for Discipline that he had the attached telephone message from Ronda Raff. It is easily inferred from this fact that Peetz knew Raff was keeping the abuse allegations secret from Evan. Clearly Peetz was involved in a conspiracy with Raff to keep the abuse allegations secret unless they had to be disclosed to harm my client.

What about the fact that I had my client call Raff, which is the natural response, immediately upon discovering the allegations in September, 1994? According to my client, Raff said she was not suppose to talk about it. It is not natural to believe your ex-spouse is burning your child with cigarettes, injuring the child to the point of bruising, doing something to the child that is causing the child to hump the bed and urinate and not confront your ex-spouse. You can't tell me Raff acted to protect the child. Raff was clearly only trying to harm my client.

What about the fact that I called Marge Ziska to testify before the Referee and she was dumbfounded to be there, thereby proving both Raff and Rowse committed perjury at the Third District Committee on Inquiry hearing? People lie because they have a guilty conscience. Raff and Rowse knew they was caught trying to harm my client by failing to protect the child.

What about the fact that Peetz had shown a pattern of filing false complaints to get the government to do his bidding? Peetz clearly committed the crime of false reporting against me by lying to the Counsel for Discipline. Peetz clearly committed the crime of false reporting against my client on June 1, 1993, to get the law enforcement officers to use police force to remove the child without a court order.

In fact, by the time the Nebraska Supreme Court got the case I had the 8th Circuit Court of Appeal's published opinion. The Nebraska Supreme Court actually cites this case. The 8th Circuit clearly rejected Peetz' alleged versions of his actions on June 1,

1993. The court implicitly, but clearly, stated Peetz lied on at least ten (10) occasions when he recited his versions of his actions on June 1, 1993. The 8th Circuit clearly rejected all the conclusions made by the Third District Committee on Inquiry.

Clearly I had enough circumstantial evidence to convict Peetz beyond a reasonable doubt for the crime of false reporting the abuse allegations. As I said above, I have never lost a jury trial. I have no idea how many I did. You will never convince any honest person that I was such a good trial lawyer I never lost with farmers, carpenters and plumbers, yet was so defective in one case where the jury was lawyers that it could be said my logic amounted to knowingly making a false statement of fact.

19. At this point I have clearly shown that the Nebraska Supreme Court's logic was ridiculously flawed and the court knowingly made false statements of fact. I will not belabor the point but I have attached the entire court opinion hereto for you to read. You will read over and over, time and again that Peetz and Raff are such honest people I would have had to concede my client abused his child had I simply asked them if he had. This is ridiculous. But I have other errors to point out that show how devious the Nebraska Supreme Court is and what a threat the court poses to the people of the United States of America.

The Nebraska Supreme Court actually decides if people live and die. At this point I must mention the case of Eric Vela, a mentally retarded man the court just send to death row. Joe Smith, the Special Prosecutor herein, prosecuted Vela in the District Court of Madison County, Nebraska. Although I have not read the opinion, if the Nebraska Supreme Court relied on evidence produced by Smith the court knows the evidence is suspect, especially expert testimony. It would certainly appear the court is returning a favor to Smith for keeping me quiet for the last thirteen (13) years. This is murder. I cannot give up. What's at stake is the future of the United States of America.

20. The Nebraska Supreme Court states that: "Peetz was eventually contacted by the sheriff's office and by Tom Herzog, Holt County Attorney, in an attempt to seek information regarding the terms of the divorce decree. Telephone records introduced at trial establish that all calls between Peetz and county officials were made to Peetz' office"

The 8th Circuit stated that: "The same day, the ex-wife's attorney, Forrest Peetz spoke with County Sheriff Fox, accusing [Evan] Zakrzewski of refusing to return the child in violation of the divorce decree and requesting assistance in returning the child to the mother."

Clearly these conclusions of fact are not consistent. One must be wrong. This is simple logic. But no President, Governor, Attorney General, psychiatrist, lawyer, judge, investigative reporter, police officer, FBI agent, my parents, my client or church can figure out that the Nebraska Supreme Court lost its' objectivity because they are all members of the NSBA and "fixed" the case. How could the Nebraska Supreme Court come to such fundamentally different factual conclusions than the 8th Circuit? What happened is I had to get out of the state of Nebraska to find honest judges that actually looked at the evidence instead of protecting their friends in the NSBA.

The Nebraska Supreme Court also makes a mistake in logical reasoning. An incoming phone log does not prove Peetz never called out first or walked to Herzog's office to call Judge Cassel. The incoming phone log of Peetz that was not discovered by Peetz until after I filed my affidavit does not prove all calls were made to Peetz' office.

How many times must I prove the Nebraska Supreme Court lied from the bench before the people responsible for the safety of all Americans take action to protect the citizens? Here's one more for good measure.

The Nebraska Supreme Court states that: "According to Herzog the judge directed him to tell the sheriff to tell Evan Zakrzewski to give the child back." The 8th Circuit states that: "The judge issued no orders." Clearly these conclusions are not consistent. One must be wrong. This is simple logic. But again as I said above no will put the Nebraska Supreme Court on trial. What happened is the 8th Circuit relied on the affidavit of Cassel, even though it was clearly drafted to protect Peetz and Herzog, and the Code of Judicial Ethics to come to its' conclusion as to the behavior of Cassel on June 1, 1993. The Nebraska Supreme Court used the hearsay of Herzog, who was clearly lying, engaged in a conspiracy to commit perjury and obstruct civil right litigation.

21. The final straw. Earlier in this document I informed you that the 8th Circuit had, by accident, made a factual mistake that changed the outcome of the case. I also stated that months later the Nebraska Supreme Court would make the same factual mistake on purpose to cover up the fact that the NSBA had successfully obstructed my prosecution of the federal civil right action. Let me now prove the final straw.

In its' opinion dated July, 1996, the 8th Circuit wrote that: "On his way home from the sheriff's office, [Evan] Zakrzewski encountered deputies Rowse and Fernau, who approached his vehicle from the opposite direction. The deputies motioned for Zakrzewski to stop, but they did not turn on their warning lights". This is clearly wrong. I have proven this is not what happened by attaching the police reports of deputy sheriff Rowse and Sheriff Fox.

Again what really happened is that at about noon Fox called Sharron Zakrzewski with a threat that the child had to be returned. Sharron contacted Evan who went to the Sheriff's office and confronted Fox. Evan made it clear he was not returning the child. Evan then called me. After Evan related to me what the Sheriff had told him I called Judge Cassel who told me he would tell me the same thing he told Peetz: file your motion. I then called Herzog, Rowse and Peetz and told them Evan would sue them if they used police power to remove the child without a court order. Evan was committing no crime. That should have ended it if the conspirators were not going to force Evan to give the child back. It did not. At 4:00 p.m. Rowse and Fernau went to Sharron Zakrzewski's making threats. Sharron contacted Evan who tried to hide from the officers. The officers tracked Evan down. Evan did not physically resist the officers as such effort would have been illegal and fruitless.

In March, 1997, the Nebraska Supreme Court wrote that: "According to the testimony form Holt County Deputy Alan Rowse, Evan Zakrzewski was then asked to return Heath that day by 4 p.m. Not surprisingly, Evan Zakrzewski recounts a different picture; one in which he was physically threatened with physical danger and jail time if he refused to return Heath that day. After Evan Zakrzewski's contact with Rowse, he called his brother respondent herein for advice" (Emphasis added).

Clearly the Nebraska Supreme Court was covering up the fact that the 8th Circuit made the factual mistake that Evan met Rowse and Fernau on his way home from the Sheriff's office. That is the only way Evan could have called me after his contact with Rowse. The police reports attached hereto make it clear Evan called me after his contact with Fox not Rowse. The court is caught fixing a case to cover up criminal activity by the

state of Nebraska. We must protect the people of the United States of America from such men. It is my duty as a lawyer, citizen, Christian and decent honest man.

CHAPTER TWO
(The cover up)

1. A summary. On Christmas Eve, 1997, I was accused in sworn documents by Gary Lacy, Lancaster County Attorney, of approximately ten (10) crimes against the Nebraska Supreme Court and its' staff. The charges were a carefully crafted hoax meant to discredit me and scare me into submission. I was held for approximately thirty (30) days on three (3) million dollar bond. In 1999, after many unsuccessful attempts to depose members of the Nebraska Supreme Court, I eventually pled no contest to two (2) class three (3) misdemeanors. I was fined $1,000.

I had engaged in civil disobedience to bring media attention to my situation. The lawyer my parents hired for me, Terry Cannon, sold me out, said ridiculous things to the press and basically argued I was guilty as charged. Representing myself I would eventually get two (2) of the three (3) felonies dismissed on a plea in abatement because Lacy did not have probable cause to file the charges. Cannon should have argued they would never convict me of the crimes but he said things to the newspaper like I should not have represented my family because I had lost my objectivity.

You cannot tell me neither Gary Lacy nor Cannon could not figure out what I have proven in Chapter One. Gary Lacy and the Lancaster County Attorney's office is a threat to the safety of every American. How much persecution do I have to prove before a psychiatrist will be honest? The psychiatric profession is a threat to every American.

In 1999, I was intentionally misdiagnosed by corrupt government appointed psychiatrists to cover up the fact that the NSBA had engaged in racketeering activity and that the Nebraska Supreme Court had intentionally misstated the facts in my disciplinary case to protect the NSBA. I was diagnosed as a paranoid schizophrenic. I allegedly have delusions of persecution. I have been falsely imprisoned through the use of the Mental Health Board for nine (9) of the last thirteen (13) years. Every hearing is a sham. Every lawyer appointed me sells me out and refuses to argue what I have proven in Chapter 1. The lawyers appointed will not brief my cases on appeal, untimely file my appeals and lie to me constantly. My last lawyer failed to timely tell me the judge had denied my appeal.

My family has agreed to help the government cover up the corruption I have proven in Chapter One. My family will only appear at the commitment hearings to testify against me at the request of Special Prosecutor Joe Smith. My sister, Natalie Ethington, has committed perjury at least three (3) times at sham commitment hearings. Natalie actually testified that Peetz and Herzog did not conspire to commit perjury against me. Natalie implied I was mentally ill for believing such. Natalie has testified I am very dangerous but too smart to make threats.

In the last twelve (12) years I have only spoken with Natalie for a total of ten (10) minutes so how she is an expert on my mental health baffles me. But Smith and the Mental Health Board have made her such an expert. Approximately thirteen (13) years ago Natalie did something very evil to me. I have only feelings of disgust when I think of the kind of human being Nathalie Ethington is. Please let me explain.

Why would the main witnesses to the fact that the Nebraska Supreme Court intentionally misstated the facts in my disciplinary case refuse to "shout" the truth that the abuse allegations had been kept secret for eighteen (18) months? There must be a reason my family and main witnesses to the fact that the Nebraska Supreme Court stole my law license will not come to my defense. The reason is blackmail. Clinton, Reno and Holder made the United States a criminal enterprise. Obama knowingly continued this criminal enterprise by appointing Eric Holder Attorney General.

The reason is that the FBI spied on me after the 8th Circuit decision came out. I knew they were spying on me. In my own home, using completely legal means, I pretended to be quite the sexual deviant to give the FBI something they could not ignore. My plan was to eventually get my parents to do a intervention. I could then prove the FBI had been the one supplying me the killer drug meth. Instead Clinton, Reno and Holder, got my parents to engage in crimes against nature itself. I did not foresee this behavior out of my family. As I said in here earlier, this was all done by the FBI because I could use the 8th Circuit decision to prove the NSBA had engaged in racketeering activity. This will sound like science fiction but it is what happened. The government got very desperate.

The government and my family y set me up on pedophile stings in an attempt to get me to commit a sex crime. They used my nieces and their friends as bait. It did not work because I am not a pedophile. There were many, many such stings, each one contributing to the delinquency of a minor and character assination of little girls. My nieces know what they did yet let me be tortured to cover up the behavior. My nieces are adults now and should be responsible citizens that do no let the government torture people, especially their own Uncle. But they are not. They are a threat to the American way of life. They cannot be trusted by their neighbors to act appropriately.

I have never molested a little girl. I do not have any desire to molest a child. In fact the thought sickens me. The truth is I am one of the best Uncles to ever have nieces. I have always been kind, generous and loving. I tried to build the best character in them I could. I taught them sports. I taught them that women could do anything a man could do. I tried to inspire them to achieve great things in life. I am proud of my behavior as an Uncle and will put any of my many nieces on the stand to prove it. The last thing the government will do is let me prove to a jury of honest, farmers, carpenters and plumbers the truth about my behavior towards children.

I am certainly not dangerous to myself or others. That does not stop Joe Smith from constantly having me arrested. I have never physically harmed anyone. I don't threaten to hurt people. One arrest was actually based on the fact that my brother-in-law assaulted me in my own home. After I first made the allegations discussed above my brother-in-law attached me. Under oath Smith somehow made this my fault. Smith argued I was dangerous because Jess Ethington broke into my home and hit me.

2. Last things first. How did I end up in the mental hospital this time? Very hideous persecution by Joe Smith. In December 2008, Smith had me arrested on a custody warrant. They abused me physically and mentally but could not conjure up a reason to commit me. After about fifteen (15) days, I was released. In February 2009, Smith again had me arrested on a custody warrant. They abused me physically and mentally but could not conjure up a reason to commit me. After about fifteen (15) days, I was released. On May 6, 2009, I was illegally arrested without a warrant based on the

alleged probable cause that I had disturbed the peace of the proven criminal Thomas P. Herzog. (Please see Chapter One). Joe Smith used this arrest to get another custody warrant. This time, while in the hospital, they abused me physically and mentally to the point that I actually "talked back" to them.

The hearing before the Board of Mental Health was clearly a sham. The state of Nebraska, through Joe Smith, made a motion that was sustained that I should be prevented from putting on any evidence of the sixteen (16) year conspiracy against me. The state of Nebraska then had a psychiatrist testify that I was delusional about a sixteen (16) year government conspiracy against me. How a doctor would know if there was a government conspiracy against me because of my work as a civil rights attorney is still a mystery to me but the Madison County District Court said the doctor clearly knew what he was talking about. The state of Nebraska, the Mental Health Board and the Madison County District Court are pretending that the question of whether there is a government conspiracy against me is a medical question to be decided by psychiatrists.

Whether there is a government conspiracy against me is a factual question. It is completely possible and actually proven herein. But one of my attorneys, Ronald Temple, actually stated in a letter to me that it was a medical question to be determined by the doctors. Temple took the deposition of Justice Gerrard but refused to ask any meaningful questions about Gerrard's behavior towards me. Temple would not question Gerrard about the fact that the Nebraska Supreme Court covered up all the evidence I actually had against Peetz, such as the fact that Peetz, Peetz' client and the Sheriff kept the abuse allegations secret for eighteen (18) months. Temple simply helped Smith get evidence against me. The American way of life is actually being destroyed to cover up the fact that the NSBA engaged in criminal activity and the Nebraska Supreme Court covered it up.

I had also subpoenaed my parents who, as I said earlier, will not voluntarily testify at my Mental Health Board hearings although they clearly know what I have set out in Chapter One to be the truth. My parents can read. They know the Nebraska Supreme Court covered up the fact that Peetz, Raff and the Sheriff kept the abuse allegations secret until they were needed to harm our family in the civil rights litigation. But my parents allow me to be intentionally misdiagnosed and falsely imprisoned. This has gone on for thirteen (13) years. My family clearly works for the government. Joe Smith had the subpoenas quashed. My parents never showed up for the hearing.

I had also subpoenaed two (2) nieces of mine that I have just recently claimed committed sex crimes against me when they were very young girls in a government effort to seduce me into attempting a molestation. I waited for my nieces to grow up before I would burden them with the sins their parents had them engage in trying to protect the government from the behavior proven in Chapter One. Smith had the subpoenas quashed.

(Note: I was diagnosed as having delusions of persecution based on my claim that the NSBA engaged in criminal activity and the Nebraska Supreme Court and Federal Government covered it up. I did not disclose all the details of my persecution until I had the evidence to prove it. I knew they would simply claim I am delusional. A delusion is actually a belief that is clearly untrue based on the evidence. I have a ton of evidence that my claims are the truth. The state of Nebraska simply has a doctor testify that it is his opinion that I am delusional. This is trial by psychiatrist, un-American and evil.)

I eventually walked out of the commitment hearing in contempt for the obviously sham nature of the hearing. I was committed and have been falsely imprisoned ever since.

The only people to testify at the sham hearing were hospital employees who clearly committed perjury about me threatening them while they were physically and mentally abusing me. No testimony was offered concerning my behavior in the community. As I have said a thousand times: I have never harmed anyone physically, never acted aggressively toward anyone or threatened to commit a crime of violence. (There was one occasion in my life where my brother Don physically threatened me and I protected myself. Don would later call the O'Neill Police Department and make a false report about my behavior. A witness that saw the incident stated it was Don's fault and agreed to testify but the police refused to charge Don with the crime of false reporting.)

Malissa Wentling, my so-called attorney at this hearing, refused to brief the case on appeal. Wentling actually lied to the judge. Wentling told the judge I told her not to brief the case. Wentling also failed to timely inform me the corrupted Madison County District Court had denied my appeal. I lost my right to appeal to the Court of Appeals. I told the Madison County District Court about this and Judge Kube told me it was between me and my attorney. Kube has since refused to respond to my request to be appointed a new attorney. Kube lied in his decision denying my appeal. Kube actually stated that by me telling the hospital staff they would be charged with false imprisonment was a threat warranting hospitalization.

2. Back to the beginning. In 2000, I again was charged with ethical violations for pleading no contest to disturbing the peace of the Nebraska Supreme Court. Again, during this alleged due process, I was unsuccessful in many attempts to depose members of the court. The court actually stayed the disciplinary case, claiming I was temporarily incapacitated because of mental illness from continuing the case. This was done immediately after I filed a motion to depose Gerrard. I was afforded no due process. The case was and has been stayed for over ten (10) years based solely on the unchallenged word of a doctor appointed by the court at the request of the NSBA. The court obviously does not want to answer questions about their behavior. The court knows it lied to the public, are thieves and racketeers.

This alleged psychiatrist, Bruce Gutnik, claimed I suffered from delusions of persecution because I claimed the Nebraska Supreme Court fixed my disciplinary case. I wrote Gutnik a twenty-two (22) page letter with approximately one hundred (100) attachments. In this letter I completely destroyed the Nebraska Supreme Court's disciplinary decision. Gutnik claimed he could not understand what I have proven in Chapter One. I sent the "Gutnik letter" and attachments to every public servant in a position to help me. This includes George W. Bush, all the governors of Nebraska, etc. The only person to respond was Ben Nelson who told me to get a lawyer and he was sorry I felt like a political prisoner. I sincerely cannot find an honest public servant anywhere in the United States of America. The Country is being destroyed.

4. In 2001, I again engaged in civil disobedience. I am quite tired of being deprived of due process. I disturbed the peace of Justice Gerrard. Gerrard knew why I was complaining but nonetheless, I was arrested by the Gary Lacy for allegedly stalking three (3) members of the Nebraska Supreme Court. Two (2) of the stalking charges were based solely on one contact I had with two (2) members of the court besides Gerrard. They would have never convicted me so they played a vicious legal game with me. I spent four (4) months in jail awaiting trial. I was held on a $25,000 bond. I had $2,000 but my family would not come up with $500 to bail me. My family owed me $3,000.

(Note: I told you, my family works for the government. How much proof do I need? They have allowed me to be intentionally misdiagnosed as having delusions of persecution, do nine (9) years in a mental hospital and insist I let the Nebraska Supreme Court steal my property. My family insists they will allow me to be imprisoned for the rest of my life if I do not give up my pursuit for justice. Again, my family can read. They know the Nebraska Supreme Court covered up the fact the abuse allegations were kept secret for eighteen (18) months. Any other client would have come to my rescue. But because it is my family that I helped and I played the game with the FBI, Clinton, Bush and Obama have been able to get my client to abandon me.)

5. Nebraska then claimed I was incompetent to stand trial on the stalking charges. District Court Judge Earl Whitoff, without any meaningful hearing, agreed. After four (4) months in the Lincoln Regional Center the psychiatrists claimed I would never again be competent to stand trial on the misdemeanor charges. The stalking charges were dismissed. Gary Lacy filed a civil commitment petition. Without a court hearing, the case was transferred to Madison County. I was then denied subpoenas on the justices because it was 118 miles to Lincoln from Norfolk, which is over the 100 mile civil case limit. I was committed without ever being able to confront the people who accused me of stalking them. The justices again remained silent. I did 2 ½ years in a cage out of this ordeal. Joe Smith simply quashed any meaningful subpoenas. My family again helped Smith. (Note: I have never heard of the victim's right to remain silent!)

6. When I got out of the mental hospital in 2004, I wrote about my experiences. I tried to get help for the persecution I was suffering. I could find no help. I headed to Canada. I was desperate for relief from the assault by the government and my family.

7. I stood on Canadian soil but was denied admission into the country. The immigration official claimed I had done 29 days in jail; proving I had been convicted of either making terroristic threats or stalking. This was of course a lie. I formally sought political asylum. I was told I would be put in jail until they could do a background check. I knew there was a Canadian Consulate in Detroit. I stayed in Detroit a month. I contacted the Consulate almost every work day. I had other people contact the Consulate on my behalf. The Consulate would not do a background check. I was told if I went to the Consulate with my paper work I would be arrested. Clearly this was the work of George W. Bush.

(Note: I started contacting George W. Bush in 2001 while in the mental hospital. I told Bush the game I had played with the FBI. I told Bush about the gross invasion of my privacy that the FBI had engaged in by putting cameras in my own home. I proved to Bush everything that is set out in Chapter One. I immediately sent Bush a copy of the "Gutnick letter". Not once would Bush respond to my thirteen (13) letters although I requested in each letter that he respond and tell me if his office received my material. Apparently George W. Bush did not have enough staff to respond to his mail. Ha!)

8. In late 2004, I went back to Nebraska. Joe Smith, without a warrant and based on a complaint by my sister Natalie Ethington, drove 100 miles to my home, snuck in, snuck through the kitchen, snuck through the living room and down the hallway and broke into my bedroom. Being scared, I grabbed a knife to protect myself. The cop with Smith pointed his gun at me and stated he was going to kill me. I dropped the knife in time to save my life. Smith and my family were clearly trying to get me to commit suicide by cop. The Mental Health Board said it was my fault for pulling a knife on Joe

Smith to protect myself in my own bedroom. According to the Board I was clearly dangerous as a result of my behavior. I again did 2 ½ years in a cage as a result of this conspiracy to kill me that went wrong.

9. Smith actually claimed in a brief that he was the one to enter the house because he and I liked to discuss legal issues. This was a bold face lie. I despise Smith, am afraid of him and he knows it. I believe Smith, Clinton, Bush and Obama, etc. are the biggest threats to the American way of life since Hitler. Smith was sent into my home to try and provoke me into acting in way that would allow the cop to kill me. I have already told you why my family wants me dead. I know what they did to their own family members, i.e. me and my nieces.

10. In 2007 I was released from the mental hospital the last time. I took a year off from my case to focus on my ability to live life without alcohol although I was suffering emotional stress the likes of which few human beings have ever had to endure. I beat my alcoholism. I no longer have a desire to drink. I am a brutally tortured and disabled person who is doing his best to fix a Country that has gotten very sick because of other men's sins. I am so tired for being punished because other people engaged in criminal activity that I will defect to another Country if this Country cannot be saved. This will be necessary because the people who are responsible for my safety have agreed to let Joe Smith do anything he wants to me. To see how hideous the persecution Joe Smith has imposed upon me please see paragraph 2, Last things First, above.

11. Reciprocal Discipline. When you are licensed in more than on court and another court imposes discipline on you, you are subject to reciprocal discipline by the other courts. I was not only licensed in the state of Nebraska but also the U.S. District Court for the District of Nebraska and the 8th Circuit Court of Appeals. Immediately upon the Nebraska Supreme Court suspending me for eighteen (18) months in their fixed decision the U.S. District Court for the District of Nebraska Ordered me to show cause why reciprocal discipline should not be imposed.

The proven criminal, U.S. District Court Judge Thomas Shanahan, (See Chapter One) led the charge for the U.S. District Court. Shanahan knew his factual conclusions had been overruled by the 8th Circuit and that the Nebraska Supreme Court had adopted his overruled factual conclusions as its' own. Shanahan clearly knew the Nebraska Supreme Court had covered up for the NSBA. Shanahan would victimize me again by imposing reciprocal discipline. Shanahan would also engage in Stagnogrophy with me that is explained later herein, but it is a vicious mind game played by the government to get me to have a nervous breakdown.

12. At this time, June, 1997, I also started contacting the Nebraska Attorney General, U.S. Attorney for the District of Nebraska, Governor of Nebraska and the Omaha World Herald newspaper. I made them all an offer. I would voluntarily surrender my license to practice law if anyone could answer how the 8th Circuit's decision and the Nebraska Supreme Court's decision concerning the same events and people were factually different without conceding attorneys Forrest Peetz and Thomas Herzog conspired to commit perjury. Not a single public servant or the newspaper would take me up on my offer. Yet no relief was offered. The cover up was clearly on.

13, I must point out that Thomas Shanahan was appointed to the federal bench by Bill Clinton. The U.S. Attorney at the time was also appointed to that position by Bill Clinton. The good old boy network would take effect and Clinton, etc. would cover each

other's back. At this time I was literally being tortured by the U.S. Government to cover up the crimes I have proven in Chapter One.

14. As I have mentioned above, after the Nebraska Supreme Court suspended me I started engaging in civil disobedience by pestering members of the court. I also engaged in civil disobedience by pestering the U.S. District Court Judges for the District of Nebraska that had fraudulently imposed reciprocal discipline. Also as I mentioned above, I was arrested for the acts of civil disobedience against the Nebraska Supreme Court on Christmas Eve, 1997. I was charged with three (3) felonies.

I was out of jail on $100,000 bond when the preliminary hearing was held in the cases. Just before I entered the courtroom for the preliminary hearing, two (2) FBI agents grabbed me by the collar and drug me into a private room in the courthouse. Both poked me in the chest and forehead with their fingers, bruising my chest. The FBI agents told me if I did not leave the federal judges alone they would "drop me out of an airplane".

On my way home to O'Neill from Lincoln after the preliminary hearing two (2) fighter jets "buzzed" my car while I was driving down the highway. They flew so close to the top of my car I could clearly see the bottom of the planes. I know they broke both civil and military flight rules by coming so close to my car. This was January, 1998.

Years later I would use the Freedom of information act to request my FBI file. I wanted the report of the FBI agents roughing me up, all the letters I had wrote the FBI about the racketeering activity by the state of Nebraska and the fact that I knew the meth dealer that had just showed up at my office was one of theirs. I was told I had no FBI file.

15. Next the 8th Circuit would Order me to show cause why I should not be subject to reciprocal discipline in that court. I put together a record proving all that has been set out in Chapter One and much more. I was ordered to show up for an Oral Argument before the Court. I drove to Saint Louis, MO. The despicable 8th Circuit Court of Appeals would actually fill the courtroom up with children while I was in the process of giving my Oral Argument. When I turned around from the lectern all I saw was children. This was stagnogrphy at its' hideous worst. The hidden message was clear. If I insisted on proving the Nebraska Supreme Court fixed my disciplinary case the Clinton administration would label me a pedophile. The 8th Circuit then imposed reciprocal discipline by covering up all that I have proven in Chapter One..

16. Stagnogrphy. What the World will really be interested in the U.S. Government's use of psycho-terrorism to torture me. This is the first time the World has seen this type of sin out of a government. If I have anything to say about it there shall never again be a victim such as myself. The United States of America needs to be shunned by the rest of the World for what it is: A Whore for the Devil.

The ways in which the FBI, Bill Clinton, Janet Reno and Eric Holder tortured me are straight out of science fiction novels. They used a mind molestation technique I call stagnogrophy, which is ancient Greek for hidden meaning. The tools they used were the newspapers, especially the Omaha World Herald, radio and television. They corrupted every institution in the Country to protect a handful of criminals.

17. What they did was invade my privacy then insert material in the media that would allow me to know they had violated my privacy. They also used my family and some of my so-called friends to give me messages that they were invading my privacy.

As I stated, even the 8th Circuit got into the act by filling the courtroom with children when I was giving my oral argument on why reciprocal discipline should not be imposed.

Basically what they tired to communicate to me was that they would label me a pedophile if I did not give up. The problem with their black mail is that I am not a pedophile and never have been a pedophile. It was simply misinformation I had used to mislead the FBI into acting in a why that would blow their cover of secrecy. As I said earlier, I did pretend, using completely legal means, to mislead the FBI into believing I had the illness. I had to give them something they could not ignore and had to act on to keep their belief that they were good people.

They actually believed they had to protect children from me. The problem with that is as I have said they will never give me a jury of honest farmers, carpenters and plumbers to prove my true nature with children. As I have said herein, I would call any of my many nieces to the stand to testify about what kind of Uncle I am. I know I can prove it was misinformation, which is actually more powerful than the information the FBI thought it was obtaining by putting cameras in my home.

18. My family knows stagnogrophy is real. They engaged in it so many times that it actually started coming naturally to them and they would ad lib the tool. For example, my father and I were arguing about how corrupt the government was. He got mad and told me that if I lived in another country they would "cut my hand off". My mother immediately told him to shut up because she knew he was ad libing stagnogrophy. My nieces know stagnogrophy is real. They had one niece come home from school and sing me a song in which all she sang over and over for at least ten (10) minutes was that she was "telling on me". I finally asked her what she was going to say about me other than I was an excellent Uncle.

I have mentioned herein other times the government engaged in stagnorophy with me such as the FBI agents stating they were going to throw me out of an airplane and then two fighter jets buzzed my car while I was driving down the highway. The Omaha World Herald actually but a photograph of the meth dealer, or someone who looked exactly like him, on the front of the Midlands section of the Newspaper with a story that was filled with stagnogrophy. I still have the article. At one point I wrote about all the people I could remember engaging in stagnogrophy against me. I had over twenty people and I mailed them all a copy of what I had written about them. Not one person responded to deny they had engaged in the behavior.

19. Conclusion . I have proven in Chapter One that there has been a hideous conspiracy against me that included members of the government since November 1, 1993. In Chapter Two I have proven the hideous cover up. Please believe me when I say that the torture the United States Government put me through, and continues to put me through, is rivaled only by the torture Jesus Christ was forced to endure during his crucifixion by the Romans. I must protect other honest citizens from the same fate. Once a government as corrupted as the U.S. government starts engaging in a behavior that works they use it over and over, time and again. I don't want anymore near suicides because an honest lawyer helped his family out in an honorable fashion. The bottom line is the government got very sick under Bill Clinton. The office of the President has been contaminated by this sickness ever since. It is time to restore the United States of America into a country that respects human rights, due process and rejects devil worshipers.

CHAPTER THREE
(The Defendants)

1 .United States. It is the policy of the United States to murder, torture, falsely imprison, and physically mutilate whistleblowers such as the plaintiff. This policy is the result of the actions of the current President of the United States, the former two Presidents of the United States and the actions of the 8th Circuit Court of Appeals and the United States District Court for the District of Nebraska. I hereby incorporate Chapters One and Two herein as if fully set out. I further incorporate all paragraphs contained in this Chapter Three herein as if fully set out.

2. United States Court of Appeals for the Eighth Circuit. I hereby incorporate all paragraphs contained in this Chapter Three herein as if fully set out.

3. United States District Court for the District of Nebraska. I hereby incorporate all paragraphs contained in this Chapter Three herein as if fully set out.

4. State of Nebraska. It is the policy of the State of Nebraska to murder, torture, falsely imprison and physically mutilate whistleblowers such as the plaintiff. This policy has been made by the actions of the current Governor of Nebraska as well as the last two Governors of Nebraska and the actions of the Judicial Branch of the state government. I hereby incorporate all paragraphs contained in this Chapter Three herein as if fully set out.

5. Nebraska State Bar Association. I hereby incorporate all paragraphs contained in this Chapter Three herein as if fully set out.

6. Nebraska Supreme Court. I hereby incorporate all paragraphs contained in this Chapter Three herein as if fully set out.

7. Defendants Holt County, Nebraska, Madison County, Nebraska, Lancaster County, Nebraska and O'Neill, Nebraska. On or about March 17, 2008 plaintiff did file with each County and City a tort claim stating what the defendants in this action were doing to the plaintiff. The Counties refused to take corrective action thereby making it the policy of the Counties to murder, torture, falsely imprison and physically mutilate whistleblowers such as the plaintiff. I hereby incorporate all paragraphs contained in this Chapter Three herein as if fully set out.

8. Barack H. Obama. Prior to taking the oath of office for the office of the Presdient and while still a private citizen this defendant did enter into the criminal agreements alleged herein. I hereby incorporate all paragraphs contained in this Chapter Three herein as if fully set out.

9. George W. Bush and William J. Clinton. I hereby incorporate all paragraphs contained in this Chapter Three herein as if fully set out.

10. Eric Holder, Janet Reno, Deborah Gilg, Michael Heavican, Jon Bruning Dave Heineman Ben Nelson, Mike Johans, James G. Egley, Dan Fuller, Ann Flood, Richard Petersen, James Kube, Mark Kozisek, Joseph M. Smith, John Gerrard, C. Thomas White, Nick Caporale, John F. Wright, William Connolly, Kenneth C. Stephan, Michael McCormak, Lindsay Miller-Lerman; Gary Lacey; Clark Grant; Thomas Shanahan; Jan W. Sharp, Dennis G. Carlson, Janet Reno, Kent L. Frobish, Larry Wannamker, Cap Dierks, Alan Brodbeck, Jeffre Cheuvront, Jonathan Crouch, Charles Diers, Mary C. Gerdes, Fredric H. Kaufman, D. Steven Leininger, Mandy Stigenz, Wade Thomas, Jr.; Joeseph F. Batallion; William Cassel; Ben Matchettt ; John . Hendry; Richard S. Arnold.. All these defendants hold or have held pubic office and positions of public trust and have furthered the criminal agreements alleged herein through the performance of their duties as a public servant. They have all served as government agents and acted under the color of law to murder, torture, falsely imprison and otherwise destroy the plaintiff's mind. I hereby incorporate all paragraphs contained in this Chapter Three herein as if fully set out.

11. FBI. I hereby incorporate all paragraphs contained in this Chapter Three herein as if fully set out.

12. Terelll R. Cannon, Melissa A. Wentling, Ronald Temple, Mark Albin and Dennis Keefe. All these defendants represented me in one way or another as my attorney and each sold me out to further the criminal agreements alleged herein. Dennis Keefe is the Chief Lancaster County Public Defender whose office represented me twice and sold me out both times to further the criminal agreements alleged herein. I hereby incorporate all paragraphs contained in this Chapter Three herein as if fully set out.

13. Omaha World Herald, Lincoln Journal Star, Norfolk Daily News Lori Pilger and Leslie Reed. The defendants newspaper and reporters purposely reported negative things about me, covered up the truth, lied to the public and otherwise assisted the other named defendants in the criminal agreements alleged herein. I hereby incorporate all paragraphs contained in this Chapter Three herein as if fully set out.

14. Robert Bartle and Thomas K. Massey. Each of these defendants did represent Forrest Peetz and started the criminal agreements alleged herein. Both have assisted the other defendants named herein further the criminal agreements alleged herein. I hereby incorporate all paragraphs contained in this Chapter Three herein as if fully set out.

15. Ronda Raff, Forrest Peetz, Thomas P. Herzog. Raff is the ex-spouse of my client and committed perjury twice and sham hearings in order to further the criminal agreements alleged herein. I hereby incorporate all paragraphs contained in this Chapter Three herein as if fully set out.

16. Corey Mayberger. This defendant is one of many doctors that have committed perjury at my commitment hearings to further the criminal agreements alleged herein. This defendant did purposely and knowingly try to physically mutilate the plaintiff through the use of chemicals .This defendant conspired to murder the plaintiff herein.

Other doctors will be added to this action and are classified under Jane and John Doe 1 through 1000. I hereby incorporate all paragraphs contained in this Chapter Three herein as if fully set out.

17. Evan F. Zakrzewski, Thomsa L. Zakrzewski, Jr., Sharron A. Zakrzewski, Natalie Ethington and Jess Ethington. All these defendants are family members who agreed to help the other defendants with the criminal agreements alleged herein by covering up the fact that the Nebraska Supreme Court "fixed" my disciplinary case. These defendants set me up on pedophile stings and engaged in stagnogrophy so often it became a natural way of their acting toward me. These defendants and all defendants mentioned herein that are not government actors did conspire with the government actors to further the criminal agreements alleged herein. The defendants have testified falsely against me at commitment hearing in furtherance of the criminal agreements alleged herein. I hereby incorporate all paragraphs contained in this Chapter Three herein as if fully set out.

18. TeleCare Recovery Center at Sarpy. This defendant is a private psychiatric hospital that I am currently held at against my will. This defendant has entered into a contract and agreement with the other defendants alleged herein to further the criminal agreements alleged herein. This defendant has stepped up the defendants attempt to murder the plaintiff by forcing chemicals into the plaintiff that are not needed by the plaintiff and are meant to kill the plaintiff to cover up the behavior alleged and proven herein with attachments. I hereby incorporate all paragraphs contained in this Chapter Three herein as if fully set out.

19. Jane and John Doe 1 though 1000. These defendants represent all people who will be added to this lawsuit when there names become available through discovery. This includes psychiatrists, social workers, hospital employees, law enforcement officers, medical doctors and others not herein specifically mentioned who helped oppress me through the furtherance of the criminal agreements alleged herein. Many private individuals did further the criminal agreements herein and I believe Warren Buffet was one of these defendants who engaged in stagnogrophy in an attempt to drive the plaintiff to commit suicide. I hereby incorporate all paragraphs contained in this Chapter Three herein as if fully set out.

CHAPTER FOUR
(Damages)

1. The plaintiff has suffered tremendous physical, mental, emotional and psychological pain and suffering since November, 1993, as a result of the actions of the defendants named herein and shall continue to suffer such tremendous pain for the rest of plaintiff's life. The plaintiff has been murdered by these defendants and will live a shortened life. The plaintiff has many disabling phobias such as the fear of authority figures, little girls, law enforcement officers, lawyers, judges and strangers. The plaintiff is unable to open plaintiff's mail without feeling tremendous pain and fear the likes of which few humans have ever had to endure. This allegation is true with the disabling

phobias too. The plaintiff is completely unable to work and never again will be gainfully employed although plaintiff started out as one of the best criminal defense attorneys in the United States and never lost a jury trial the entire seven (7) years the plaintiff was able to practice law. The hourly wage the plaintiff deserves is $1,000 per hour as his skills are unmatched by others. Plaintiff would have made millions on contingency fee cases.

2. The plaintiff has been deprived of his freedom to move about and physically imprisoned for at least nine (9) years and counting. During these nine (9) years plaintiff was tortured by the deviant defendants named herein. The defendants named herein did try for thirteen (13) years and counting to brainwash the plaintiff which is extremely physically, mentally, emotionally and psychologically painful to the plaintiff. Plaintiff is forced by these defendants to fight to hold on to reality and not become lost in a world of make believe of the defendants choosing. This will be true for the rest of plaintiff's life.

3. The plaintiff has been unable to be employed since March, 1997 and was unable to fully practice plaintiff's profession as a lawyer as early as March, 1995 for fear that plaintiff would be physically harmed by the defendants named herein. The plaintiff has for the last ten (10) years suffered severe side effects of the poison the defendants did force into the plaintiff such as dizziness each and every time the plaintiff tries to stand up, tremendous headaches, constipation, blurred vision and weight gain. The plaintiff has developed one tumor already that required an operation to remove.

4. Stagnogrophy as alleged in Chapter two is incorporated herein as if fully set out. This mind molestation technique used by the government caused sever and persistent disabling emotional, mental, psychological and physical pain and suffering the like of which cannot be put down on paper. The defendants did this thousands of times, each act placing a scare on the plaintiff's mind that cannot be removed. Plaintiff will suffer from intense painful memories each and every five (5) seconds for the rest of plaintiff's life. This was and is a violation of plaintiff's human rights and a crime against nature itself. This was and is a new kind of deviant human behavior whose hideousness cannot be fully communicated without actually suffering the same type of mind molestation.

5. The plaintiff has been a slave to the defendants for the last thirteen (13) years and is required to do exactly what the defendants tell plaintiff to do or the defendants will physically, mentally, emotionally and psychologically harm the plaintiff.

6. The plaintiff has and continues to have lost his right to privacy and every moment of the plaintiff's life is subject to this invasion of privacy with the use of stagnogrophy to harm the plaintiff as much as possible. The defendants have tired to so harm the plaintiff physically, mentally, emotionally and psychologically that the plaintiff would commit suicide.

7. The defendants have tried to murder the plaintiff in more direct ways as set forth in Chapter two herein which is incorporated herein by this reference. The plaintiff lives and will live the rest of his life in constant and overwhelming fear that the

defendants will murder the plaintiff to cover up defendants' conduct alleged and proven herein with the attached documents.

8. The plaintiff has been deprived of needed and necessary medical treatment that has led to the complete disabling of the plaintiff for the rest of plaintiff's life. No treatment is now likely to help relieve the plaintiff's pain and suffering as described herein.

9. The plaintiff has been arrested approximately ten (10) times since March, 1997, and sodamized twice in obvious sexual assaults meant to humiliate and damage the plaintiff. Plaintiff is at constant risk of being murdered by the foot soldiers of the corrupted defendants named herein.

10. The plaintiff has lost the ability to enjoy life and lives in constant pain as a result of the sixteen (16) years of malicious prosecution and deviant behavior by the defendants alleged herein. Plaintiff cannot and will never again trust a human being to be honest and forthright and will never again have a meaningful relationship with another human being. Plaintiff now believes humans are inherently evil beings that are out to harm others to further their personal desires.

11. Plaintiff has spent at least two (2) thousand hours defending himself in sham court proceeding since November, 1993. The plaintiff truly believes the United States is the Great Satan and is a threat to all of humanity. The plaintiff believes this lawsuit is essential to the survival of mankind as the deviant defendants are no longer recognizable as human beings. The defendants behavior towards the plaintiff is animal behavior and not human. The defendants are soulless people who are a threat to all of humanity. Nations such as Iran need to arm themselves to protect themselves from this nation of animals and their future behavior. It is incumbent on the plaintiff to warn the world about this nation of animals and the behavior they are willing to engage in. The defendants named herein will destroy humanity to further their own interests. The Greatest Generation saved the United States form Hitler and the Nazi and this generation of defendants have so completely destroyed the United States the Country is now a serious threat to all of mankind.

CHAPTER FIVE
(Injunctive Relief)

1. All the defendants named herein must be temporarily and permanently enjoined from continuing the criminal agreements alleged and proven herein with attachments. The courts named herein as defendants are like the egg sucking dog who can no longer be trusted and must be dissolved to protect the future of humanity. The government actors named herein must be enjoined from ever acting as a public servant again in a position of public trust as they have proven they are soulless animals that must be locked in a cage to protect the future of humanity.

CHAPTER SIX
(Prayer for Relief)

WHEREFORE, I pray for the temporary and permanent injunctions against the defendants as requested herein and for such other relief and the court deems just and equitable.

. Count One. I pray for actual damages of One Billion Dollars. Plaintiff is entitled to treble damages under the Racketeering statutes.

Count Two. I pray for actual damages of One Billion Dollars and punitive damages in an amount that will deter future behavior as that alleged and proven herein with attachments.

For such other and further relief the court deems just and equitable.

Thomas R. Zakrzewski
Thomas R. Zakrzewski

SUBSCRIBED and sworn to before me this 11 day of ~~April~~ May, 2010.

GENERAL NOTARY-State of Nebraska
MANDY WEST
My Comm. Exp. May 2, 2011

Mandy West

DEMAND FOR JURY TRIAL

Comes now the plaintiff and demands that his claims made herein be tried to a jury that is not fixed by the United States or other defendants named herein. All judges in the United States are contaminated by the behavior of the defendants named herein and the Judicial Branch of the United States Government and State of Nebraska has been and forever will be destroyed.

INVESTIGATION REPORT

Classification NO.

Name of Complainant Address Phone No.

Offense: Reference Evan Zakrzewski & Son

Case Assigned To:

DETAILS OF OFFENSE, PROGRESS OF INVESTIGATION, ETC.:

Date 6-1 93

Frosty Peetz called and said Rhonda Raff was trying to get her son back from Evan Zakrzewski and he wouldn't give him up.

Frosty wanted us to go get the boy and give him back to Rhonda. I checked it out and Evan was to have him for the weekend and then give him back to mother.

I called Tom Herzog and he in turn called the District Judge, Bill Cassell. Tom called me back and told me to go and get the boy and return him to his mother.

I tried to get ahold of Evan and later he came to my office and he was very irate and stated he was gone for most of the weekend and that he wasn't going to return him yet. I told him he could be arrested if he didn't return him.

He then wanted to see the papers and I told him to go to the Clerk of the District Court, that they had them. He stated he didn't have a copy of them.

I didn't see Evan again that day.

Later in the day, I talked to Deputy Rowse and told him about the situation and that if Evan didn't have the boy back by 4:00 p.m. that he should go and try to get the boy.

Later Rowse told me he had talked to Evan and that the boy was taken to someone's house and that the boy was on his way back to his mother in South Dakota.

EXHIBIT

INVESTIGATING OFFICER(S) ______ 28 REPORT MADE BY [signature] DATE

FILED 30 THIS CASE IS 31 APPROVED BY BADGE #

No ☐ Cleared by arrest ☐ Unfounded ☐ Inactive ☐ Other ☐

Exhibit 5

145 70

Offense Dispute over Return of Child Place of Occurrence O'Neill

Report received by 936 at AM. Date 6-1 19 93 How reported phone

Date and time offense committed same Officer Assigned Rowse & Fernau

Time of investigation P.M. Date 6-1-93

Suspects and/or persons arrested Evan Zakrzewski

DETAILS OF OFFENSE (State fully all other circumstances of this offense and its investigation)

On 6-1-93 I was advised to call Sheriff Fox home. He said that he had received a complaint from Rhonda's Attorney, Frosty Peetz, about Evan Zakrzewski not returning Rhonda's son from visitation. Fox said he had spoke to County Attorney Herzog and that Herzog had called District Judge Cassel. Fox said we were to return the boy to Rhonda from Evan and if he wouldn't returnthe boy he would be arrested for violation of the custody statutes. Fox said if Evan had not returned the boy by 4:00 p.m. 6-1-93. I and Deputy Fernau was to go to Sharon Zakrzewski's and get the boy.

At approximately 2:00 p.m. I received a message to call Tom Zakrzewski Jr. about the case. He said Evan was exercising his visitation rights for June now and we had no authority to take the boy from Evan and threatened me that we would be sued if we did.

I then contacted County Attorney Herzog at his office and explained what Tom Zakrzewski, Jr. had told me about the visitation. He said we should return the boy to the mother, but not to arrest Evan Zakrzewski. At approximately 4:00 p.m., Deputy Fernau and myself went to Sharon Zakrze home and talked to Sharon Zakrzewski. Diane Johnson was there also. I asked if Evan was there and she said no, he was at his home on South 2nd. She said she felt bad about the problem because she had told Rhonda it was okay to bring Heath to O'Neill for visitation last week and that Evan had been gone. I told her that we understand that, but that Rhonda wanted Hea returned and that Evan would have to make better arrangements for the furt visitations. We thenleft and was enroute to Evan's home on South 2nd to talk to Evan. We met Evan on South 2nd andhe stopped and came over to the patrol car. I told him we were there to pickup Heath to return to Rhonda. Evan explained the problem with the visitation and that he had his daught this week and wanted the kids to get to see each other. I told him I understand the problems with the visitations but that he needed to return Heath at this time and he could make arrangements to have visitation next

REPORT MADE BY [signature] Date 6-1-93

36 FORM 8-120 ORDER FROM LAW ENFORCEMENT SYSTEMS, INC. • P.O. BOX 1835, CORS

Exhibit 4
8 pages

Name ____ Place of Occurrence ____

Report received by ____ at ____ M. Date ____ 19 ____ How reported ____

Date and time offense committed ____ Officer Assigned ____

Time of investigation ____ M. Date ____

Suspects and/or persons arrested ____ pxkx page 2

DETAILS OF OFFENSE (State fully all other circumstances of this offense and its investigation)

week. He said this was going to cause a problem with him being gone on the truck and said he may have to ask for a reduction in child support. Evan then asked if he could deliver the boy or if we had to take him and where he had to go. I told him that it would be okay if he would take the boy to Patsy Liewer's. He said he would have him there in 10 minutes that the boy was at Evan's sisters. We then left. This was at approxima 4:20 p.m. I returned to the Sheriff's Office at approximately 4:40 p.m. I called Patsy Liewer and she said that Evan was there now with the boy.

At this time the dispatcher, Donna Gillogly, told me that she had received a phone call from Tom Zakrzewski, Jr. and that he was very upset and irate and he wanted to know the named of the 3 officers who had been at Sharon Zakrzewski's. A few minutes later Tom Zakrzewski, Jr. called again and wanted to talk to me. He wanted to know who had been at Sharon Zakrzewski. He said we had assaulted and threatened her and Evan. I told him I didn't know who had been talking to, but there was nothing lil that had taken place. He said his mother would testify in Court to that He wanted the names of who was out there. I told him Deputy Fernau and myself. He wanted to know on what authority we had done this. I told him from the divorce decree from the Holt County District Court. He said he wanted to know who told us to do this, was it Sheriff Fox or who? I told him I would answer that in Court. Tom Zakrzewski then hung up on me

REPORT MADE BY [signature] Date 6-1-93

37 72

Fox's sworn answers

Sept. 1994

Paragraph 25. The defendant acted in his capacity as Holt County Sheriff but did not conspire with other defendants mentioned in this paragraph or act in consort with others.

Paragraph 26. The defendant did not act individually or in consort with any other to deprive the plaintiff of his rights as set forth in paragraph 26.

Paragraph 27. The allegations of paragraph 27 are denied and defendant does not believe that the plaintiff suffered any mental, emotional, or physical harm, embarrassment or humility as a result.

INTERROGATORY NO. 2: Describe each and every contact, including any conversation, defendant had with plaintiff, Sharron Zakrzewski, Ronda Raff and Forrest Peetz on June 1, 1993, and state the purpose of the contact.

RESPONSE: I had no contact with Ronda Raff. Forrest Peetz, about 9:00 a.m. on June 1, 1993, said he represented Ronda Raff, the former wife of Evan Zakrzewski. He said that Evan Zakrzewski had the minor child for visitation, which had expired, and would not give the child back. He asked me to see what I could do. I checked the court records and Evan Zakrzewski was to have the child for a weekend. I called Thomas Herzog to find out what to do. He later called me and said the Judge said we should tell Evan Zakrzewski to just give the child to the mother. Mr. Herzog said don't make any arrests. Later, Evan Zakrzewski came to my office shouting and threatening me as previously stated, and I told him he should give the boy back to the mother. I told him that he could be charged with contempt of court and even arrested if he did not return the child, if found guilty of contempt. He was threatening and cursing me. I told him to go next door to the Clerk of the District Court and look at the divorce papers. While I have no personal knowledge, my deputies, Steve Fernau and Allen Rowse, saw Evan Zakrzewski on the street and told him he should return the child, but they did not arrest him. I know that Evan Zakrzewski delivered the child to Patsy Liewer who then took the child to the mother. Later, I know someone from our office called Thomas Herzog and told him what had happened. After June 1, 1993, both Deputy Rowse and I had some contact with Ronda Raff and the Department of Social Services of Aberdeen, South Dakota, concerning the care and treatment of Heath Zakrzewski, the minor child involved in this matter. Attached hereto is a letter and report of June 2, 1993, showing various information secured by the Department of Social Services from Rebecca Glasford of Aberdeen, by conference with Ronda Raff.

INTERROGATORY NO. 3: With respect to your allegation that defendant at all times acted in good faith, state all information and facts known to you, and the exact source of said information, upon which you relied in making said allegation.

RESPONSE: This defendant only did as instructed by the County Attorney.

Herzog's Sworn answer Sept 1994

RESPONSE: Defendant had no contact with Sharron Zakrzewski or Ronda Raff. The morning of June 1, 1993, Forrest Peetz either by telephone or in person asked me if I would contact the sheriff and request him to request the plaintiff to release the child to his mother because his visitation had expired.

INTERROGATORY NO. 3: With respect to your allegation that defendant at all times acted in good faith, state all information and facts known to you, and the exact source of said information, upon which you relied in making said allegation.

RESPONSE: After I was contacted by Forrest Peetz I went to the office of the Clerk of the District Court and looked at the Decree of Dissolution in the divorce case of the plaintiff and Ronda Zakrzewski, now Ronda Raff, and copied pertinent parts of the Decree having to do with rights of visitation of the plaintiff with the minor child. I then called Judge Cassel for the purpose of making certain I understood the portions of the Decree having to do with visitation rights which seems to be straight forward and understandable. The Judge said that I understood the visitation rights correctly and I should just tell the sheriff to request the plaintiff to return the child to his mother. I called the sheriff's office and told whoever I spoke with to just request the plaintiff to release the child to his mother and to make no arrests. Late in the afternoon Steve Fernau called and said the child was delivered by the plaintiff or someone for him to a third party who would give the child to his mother. When I was informed of the disposition of the child I called Forrest Peetz to advise.

INTERROGATORY NO. 4: State what criminal statute, if any, plaintiff was allegedly violating or under suspicion of violating on June 1, 1993 involving the minor child Heath Alexander Zakrzewski.

RESPONSE: I never claimed that the plaintiff was violating any criminal statutes on June 1, 1993.

INTERROGATORY NO. 5: State any and all facts that support the conclusion that probable cause existed that plaintiff was violating any statute disclosed in your response to Interrogatory No. 4.

RESPONSE: N/A

INTERROGATORY NO. 6: State whether plaintiff was arrested on June 1, 1993, by defendants and state and describe all facts supporting your position.

RESPONSE: No.

INTERROGATORY NO. 7: Identify any witnesses, including any law enforcement officials, defendant had contact with on June 1, 1993, regarding the investigation and/or arrest of plaintiff on June 1, 1993, for violating a criminal statute and describe the content of such contact.

21

necessary to examine the pertinent background facts.

UNDERLYING DIVORCE ACTION AND EVENTS OF JUNE 1, 1993

The underlying impetus of this disciplinary action involves respondent's representation of his brother, Evan Zakrzewski, in a divorce proceeding in the early part of 1993. Representing Evan Zakrzewski's former wife, Ronda Raff, in the divorce proceedings was Forrest Peetz, a practicing attorney in Holt County. Pursuant to a stipulation between Evan Zakrzewski and Raff, the district court for Holt County entered an order on March 30, 1993, awarding permanent custody of the parties' minor child, Heath, to Raff, who resided in Aberdeen, South Dakota. Evan Zakrzewski, then a resident of O'Neill, Nebraska, was to have visitation rights once a month from Tuesday until Sunday, for 2 months during the summer, and for alternating holidays.

Raff sent Heath to O'Neill several days prior to June 1, 1993, for his monthly visit with Evan Zakrzewski. Because Evan Zakrzewski was out of the state at the time for business purposes, Heath spent several days with Zakrzewski's parents, who also reside in O'Neill. Evan Zakrzewski returned to O'Neill on May 29. Despite requests from Raff, Evan Zakrzewski refused to return Heath to South Dakota on June 1. Although Raff contended the weeklong visitation period ended on that date, Evan Zakrzewski refused to comply, arguing that he had not seen Heath much in the last 8 months.

Upon Evan Zakrzewski's refusal to return Heath, Raff contacted Peetz for assistance. According to telephone records, Raff telephoned Peetz three times on June 1. Peetz testified that he told Raff she should contact the clerk of the district court and the sheriff's office to resolve the matter. Peetz was eventually contacted by the sheriff's office and by Tom Herzog, Holt County Attorney, in an attempt to seek information regarding the terms of the divorce decree. Telephone records introduced at trial establish that all calls between Peetz and county officials were made to Peetz' office.

Blantant Lie by Neb Sp. Ct. See Police Report & Sworn Answers 8 Sept 1994. (Exhibit 5)

Learning of the situation, Herzog examined the divorce decree provisions concerning visitation and called the district

**Page 43**

court judge who granted the divorce decree. According to Herzog, the judge directed him to tell the sheriff to tell Evan Zakrzewski to give the child back. Following the orders of Herzog, Holt County Sheriff Charles R. Fox relayed this information to his deputies. Fox specifically stated that he instructed his deputies not to use physical force or intimidation against Evan Zakrzewski.

Remember this is just one of many false fictual statements made by the corrupted Neb. Sp. Ct. T.Z.

According to testimony from Holt County Deputy Alan Rowse, Evan Zakrzewski was then asked to return Heath that day by 4 p.m. Not surprisingly, Evan Zakrzewski recounts a different picture; one in which he was physically threatened with physical danger and jail time if he refused to return Heath that day. After Evan Zakrzewski's contact with Rowse, he called his brother, respondent herein, for advice. Respondent proceeded to make calls to Peetz, Herzog, and the sheriff's office to halt the return of Heath. In each instance, respondent made it a point to state that he would sue each individual if Evan Zakrzewski was forced to

[handwritten, left margin:] ...e Police report of Rowse. Court knew he had a Cir. mistake

Exhibit 6 181 How devious is this!

EXHIBIT 5 34pg KH 1/12/09

akrzewski, Humphrey, NE,

ney, Lincoln, NE, argued l and Todd B. Vetter, on the ee.

AN, LOKEN, and it Judges.

cuit Judge.

zewski appeals the district summary judgment in favor s in this 42 U.S.C. § 1983 ski filed this action against ts board of supervisors, the harles R. Fox), two deputies wse and Steve Fernau), the ng attorney (Thomas Her- wski's ex-wife's private at- Peetz), claiming that they titutional rights to be free le seizure and unreasonable his parent-child relation- ct court concluded that the d of did not amount to a ation. We agree.

v a district court's grant of nt de novo, using the same district court. *See Disesa munity College,* 79 F.3d 92, . We will affirm the deci- e evidence in the light most onmoving party, there is no aterial fact and the moving to judgment as a matter of P. 56(c); *Landreth v. First bourne County,* 45 F.3d 267, 5). *See also Anderson v. nc.,* 477 U.S. 242, 247–48, 2509–10, 91 L.Ed.2d 202

action is a dispute between his ex-wife over Zakrzew- d visitation rights with his n the divorce decree, Za- e has legal custody of the wski has reasonable visita- period of Tuesday through r month and every other articular Tuesday through

lge for the District of Nebraska.

Sunday period was left to the parties to work out each month. While Zakrzewski was out of town with his work, his ex-wife arranged to send the boy to Zakrzewski's parents' home for the May, 1993, Tuesday through Sunday period (which happened to include the holiday of Memorial Day weekend). Zakrzewski is an over-the-road truck driver and did not learn that his son was at his parents' home until Friday of that week. He shortened his trip and returned home late Saturday night. Monday was the Memorial Day holiday, and it was also his holiday to have the boy. The next day was Tuesday, June 1.

On Tuesday, June 1, 1993, Zakrzewski's ex-wife called, insisting that his visitation had ended with the Memorial Day holiday and demanding that he return the child to her. Zakrzewski protested, wanting to keep the child that week for his June Tuesday through Sunday visitation period. The same day, the ex-wife's attorney, Forrest Peetz, spoke with County Sheriff Fox, accusing Zakrzewski of refusing to return the child in violation of the divorce decree and requesting assistance in returning the child to the mother. Sheriff Fox then called Zakrzewski with a warning to return the child as the ex-wife demanded or face a felony charge with the potential for a three- to five-year prison term. Zakrzewski went to the sheriff's office to protest the sheriff's demand and was told to deliver his son by 4:00 p.m. that day to the designated third person who would then, in turn, return the child to the mother. Sheriff Fox indicated that a state district court judge had been consulted and advised them "to do anything it took to get that son back to his mother." (Appellees' App. at 330 (Zakrzewski's Dep.)).

On his way home from the sheriff's office, Zakrzewski encountered deputies Rowse and Fernau, who approached his vehicle from the opposite direction. The deputies motioned for Zakrzewski to stop, but they did not turn on their warning lights. He immediately stopped his vehicle and walked over to the deputies, who remained in their car. Deputy Rowse told Zakrzewski that they had orders to take the child and deliver him to the designated third person. They threatened to arrest Zakrzewski if he refused to comply. Zakrzewski then asked if he, rather than the deputies, could be allowed to return the boy. The deputies consented, and Zakrzewski returned his son without further incident.

Zakrzewski states that he believed he would have been restrained had he refused to cooperate. Earlier in the day, County Attorney Herzog, who had spoken with a Nebraska district court judge, advised the deputies to return the child without arresting Zakrzewski. The judge issued no orders. Zakrzewski contends that other less significant incidents and disputes with the defendant law enforcement officials occurred as well, but we will not recount them here.

The district court determined that even accepting as true all of Zakrzewski's evidence and giving him the benefit of every reasonable inference, the events simply do not rise to the level of a constitutional violation. Additionally, the court concluded that defendant Peetz is not a state actor within the meaning of § 1983 and that the officers were entitled to qualified immunity. Thus, the court granted summary judgment to the defendants. Zakrzewski appeals.

To sustain a claim under § 1983, Zakrzewski must demonstrate that persons acting under color of state law deprived him "of any rights, privileges or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "The first inquiry in a § 1983 claim is to determine '[w]hether the plaintiff has been deprived of a right secured by the Constitution and laws' of the United States.'" *Doe v. Wright,* 82 F.3d 265, 268 (8th Cir.1996) (quoting *Martinez v. California,* 444 U.S. 277, 284, 100 S.Ct. 553, 558, 62 L.Ed.2d 481 (1980)). "The answer to that inquiry disposes of this case." *Martinez,* 444 U.S. at 284, 100 S.Ct. at 558.

[2, 3] Zakrzewski contends that the defendants unreasonably interfered with his liberty interest in parenting his son because his visitation was unreasonably interrupted. It is beyond question that "'[p]arents have a fundamental "liberty interest" in the care, custody, and management of their children.'" *Fitzgerald v. Williamson,* 787 F.2d 403, 407 (8th Cir.1986) (quoting *Ruffalo v. Civiletti,* 702 F.2d 710, 715 (8th Cir.1983), citing *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599

Case altering factual mistake

See Police Reports

See Pg 7 of this Decesion

**U.S. Department of Justice**

*United States Attorney*
*District of Nebraska*

*1620 Dodge Street, Suite 1400*
*Omaha, Nebraska 68102-1506*

*PH: (402) 661-3700*
*FAX: (402) 661-3084*

October 20, 2008

Thomas R. Zakrzewski
P.O. Box 191
O'Neill, NE 68763

RE: Your contacts with the U.S. Attorney's Office

Dear Mr. Zakrzewski:

You have been in contact with the United States Attorney's Office for the District of Nebraska for the better part of a decade. This office does not have the authority to address the issues you have raised. As such, we are unable to assist you with the problems you are experiencing.

I am writing to advise you that this office will no longer take your calls. Our receptionists have been instructed to hang up if you call again. You will need to contact this office in writing if you have matters you wish to bring to our attention. In the meantime, we highly recommend you cooperate with any lawyer or medical professional who is attempting to work with you. I wish you well in your future endeavors.

Sincerely,

JAN W. SHARP
Criminal Chief

JWS/js

PEETZ AND PEETZ
Attorneys at Law
P.O. Box 59
126 North 4th Street
O'Neill, Nebraska 68763-0059

ORREST F. PEETZ

Tel. (402) 336-3382

Of Counsel
NANCY Z. PEETZ

November 1, 1993

RECEIVED
NOV 2 '93
NSBA OFFICE
FOR DISCIPLINE

Mr. Dennis G. Carlson
Counsel for Discipline
Nebraska State Bar Association
P. O. Box 81809
Lincoln, NE 68501-1809

RE: THOMAS R. ZAKRZEWSKI #19625

Dear Dennis:

I wish to make a formal complaint against Thomas R. Zakrzewski for violating the code of professional responsibility, particularly DR7-102(A)(1) and (5).

In this regard I am enclosing a copy of a civil suit that the above referenced attorney filed on behalf of his brother in the Federal District Court for the State of Nebraska. This complaint is made insofar as he has sued myself as a party and made allegations at Paragraphs No. 9 and 10 of the complaint.

This situation arises out of a divorce between Evan F. Zakrzewski and Ronda F. Raff f/k/a Ronda F. Zakrzewski. The divorce was initially instituted in the State of South Dakota by Mrs. Zakrzewski, and then Mr. Zakrzewski filed a similar case in Nebraska, all in the fall of 1992. The jurisdictional issues between the Courts were resolved and on February 25, 1993, a trial occurred in the District Court of Holt County, Nebraska, regarding the remaining custody issue to be litigated in that Court. After six hours of hotly contested custody litigation, the parties ultimately settled and a copy of the decree evidencing these proceedings is enclosed.

Thereafter, on or about June 1, 1993, I received a telephone call from my former client, Ronda F. Raff, advising the Mr. Zakrzewski would not return the child after a visitation. As she was calling from the State of South Dakota and time was apparently of the essence, I simply referred her to the local law enforcement authorities, particularly the Holt County Sheriff, to see if they could assist her in resolving this problem.

As a result, I am now alleged to have participated in a conspiracy to deprive someone of their constitutional rights.

+Lie
crime
conspiracy
starts here
Nov 1993
T.Z.

Exhibit 3
48 Pages

Mr. Dennis R. Carlson
Page Two
November 1, 1993

Mr. Tom Zakrzewski knows that this law suit is frivolous and I can only expect that it is brought in bad faith in an effort to harass the public officials sued, as well as myself since I was the trial lawyer for his brother's ex-wife. Such conduct by a practicing member of the Bar, in my opinion, is inappropriate, and demeans our profession.

I would appreciate your investigation in to this matter and I would be happy to provide additional information as you deem appropriate.

Very truly yours,

PEETZ and PEETZ

BY: Forrest F. Peetz

FFP:kh

Enclosure

FITZGERALD, VETTER & TEMPLE

ATTORNEYS AT LAW

MARK D. FITZGERALD*
TODD B. VETTER
RONALD E. TEMPLE*
COURTNEY KLEIN-FAUST
*ALSO ADMITTED IN SOUTH DAKOTA

1002 RIVERSIDE BLVD., SUITE 200
P.O. BOX 1407
NORFOLK, NE 68702-1407
PHONE: 402-371-7770
FAX: 402-371-7822

March 30, 2005

Thomas Zakrzewski
c/o Norfolk Regional Center
P.O. Box 1209
Norfolk, NE 68702-1209

Dear Tom:

Re: In the Interest of Thomas Zakrzewski
11-79 &12-100

I am in receipt of your letter dated March 28, 2005, to me as well as a letter dated March 28, 2005, to your mother.

As for Justice Gerrard, I intend to ask him questions regarding your contact with his office directly. I intend to ask him about the extent of those conversations. I intend to ask him about how many times that occurred. I intend to ask him whether you have ever threatened him. I intend to ask him how he felt after each of those phone calls. Further, I intend to ask him various questions surrounding the times where you contacted his office.

I will not ask him any questions about any opinion that he has wrote and I will not ask him any questions about any opinion of the 8th Circuit Court of Appeals. Those matters are irrelevant. The opinions have been written. He has no personal knowledge about the 8th Circuit opinion. Further, with respect to his opinion in your disciplinary case, he is not obligated to answer any questions about why he did what he did or wrote what he wrote.

~~If you don't like this, I'm sorry. However, I am not going to ask questions of any witness, especially a Supreme Court Justice, that are irrelevant to the case. Whether you are delusional is a medical issue and that issue has no relationship to what Justice Gerrard wrote in an opinion several years ago.~~

Yours very truly,

RET/nmo
rtemple@inebraska.com

16

R

Thomas R. Zakrzewski SS No: 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 ID: 17,055

# Treatment Plan

for

Thomas R. Zakrzewski

## tient Data

| | | | | | |
|---|---|---|---|---|---|
| **Patient ID:** | 17,055 | **Birthdate:** | 4/19/1964 | **Patient Status:** | Active |
| **Address:** | PO Box 191 | **Age:** | 42 | **Previously Treated?:** | Yes |
| | | **Gender:** | Male | **Department:** | 2W |
| **City:** | Norfolk | **Race:** | Caucasian | **Setting:** | In-patient |
| **State:** | NE | **Marital Status:** | Single | | |
| **Zip:** | 68701 | **Admission Date:** | 11/16/2004 | **Psychiatrist:** | Stephenson |
| **Home Phone:** | N/A | **Discharge Date:** | | **Employer:** | Unemployed |
| **Work Phone:** | | **Last Review:** | 4/4/2006 | **Referral Source:** | |
| **SSN:** | 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 | | | | |

**Patient Strengths:** Expressive/Articulate, Has benefits, Has worked in the past, Intelligent, Physically Healthy, Pleasant, Positive attitude, Has gained some insight into his condition..

## agnosis (DSM-IV)

**Axis I:** 295.32 Schizophrenia, Paranoid Type, Continuous
303.93 Alcohol Dependence In Sustained Full Remission

**Axis II:** V71.09 No Diagnosis

**Axis III:** 244.9 Hypothyroidism 706.1 Acne Vulgaris

**Axis IV:** 1 - Problems with primary support group (Conflict with family)
4 - Occupational problems (Unemployed)
**- Stress Severity Rating:**

**Axis V:** **Current Functioning:** 31 - 40
**Last Year Functioning:**

EXHIBIT 2 5-19-09

## eatment Plan

**A. Primary Problem:** **Psychotic Disorder**

*Behavioral Definitions*
- Dangerous to self or others (threats of harm to legal authorities).
- Delusional thoughts which include (Thinking there is a government conspiracy against him).
- Anxiety, nervousness, paranoid per his report

*Long Term Goals*
- Improve functioning adequately to allow treatment in outpatient setting.

*Short Term Objectives*
- Identify changes needed to prevent rehospitalization as documented by progress notes
  **Plan Date:** 11/22/2004 **Target Date:** 8/30/2006
- Make and implement a coping plan to be used for persistent psychotic symptoms such as (hallucinations, delusions, homicidal ideation, suicidal ideation) as documented by progress notes
  **Plan Date:** 4/4/2006 **Target Date:** 8/1/2006
- Demonstrate skills to encapsulate delusional thinking as measured by progress notes and self report
  * **Plan Date:** 6/29/2006 **Target Date:** 9/1/2006

*Therapeutic Interventions*
- Determine the need for antipsychotic medications and if needed prescribe medications and adjust dosage as necessary to increase effectiveness and reduce side effects to address the following symptoms mind racing and

Thomas R. Zakrzewski
Political Prisoner
2231 Lincoln Road
Bellevue, NE 68005

March 29, 2010

Peter Salter
Lincoln Journal Star, City Editor
P.O. Box 81609
Lincoln, NE 68501

RE: My status as a political prisoner in the United States: A Pulitzer Prize winning story.

Dear Mr. Salter:

Please do no immediately discount my claim of being a political prisoner. Please read the letter enclosed to Chief Judge Batallion of the United States District Court. Please check with your legal department to see if I really was illegally arrested on May 6, 2009. I know I was because I am a lawyer. You cannot arrest someone in the state of Nebraska based on the probable cause that they disturbed someone's peace. The police officer must first get a warrant.

The U.S. Attorney, Debra Gilg, knows of this corruption and much more but is doing everything in her power to cover up the illegal behavior. Please read all the documents attached. Jon Bruning and Michael Heavican also know about the persecution I am being forced to endure. No one will do anything to help me however. The powers that be are quite comfortable destroying the entire judicial system to cover their backs. I really don't think the state government in Nebraska can be saved.

I truly am a political prisoner because of my work as a civil rights attorney. We must restore the system for future generations to be safe. I have committed my life to saving the United States from the individuals the Founding Fathers knew would come. Thankfully the Founding Fathers provided the tools necessary for me to do my work in an honorable fashion, such as a mostly free press.

Nobody will even respond to my correspondence. I wonder if the Federal Government is intercepting my mail. Please, I ask kindly, that you respond with your thoughts about how I should proceed to fix a broken system. Please respond at the address above. Please tell me if you received my material, are going to investigate my claims or any steps you want me to take to get your help.

Sincerely,

Thomas R. Zakrzewski

Thomas R. Zakrzewski

Thomas R. Zakrzewski
Political Prisoner
2231 Lincoln Road
Bellevue, NE 68005

March 21, 2010

Chief Judge Batallion
United States District Court for the District of Nebraska
111 South 18th Plaza, Ste 3259
Omaha, NE 68102

RE: Corruption in the office of the United States Attorney for the District of Nebraska

Dear Judge Batallion:

I regret to report that things have gotten very bad in the District of Nebraska. I am writing to ask for your help in returning justice to the system in Nebraska. I have attached hereto an "Affidavit of Probable Cause" that positively shows on its' face that I was illegally arrested on May 6, 2009. I have not been home since. I have been falsely imprisoned since May 6, 2009. I have never been charged with the crime alleged in the affidavit of probable cause. Thus I will never be convicted of the alleged crime.

The U.S. Attorney, Debra Gilg, knows of this corruption and much more but is doing everything in her power to cover up the illegal, evil behavior. Please read all the documents attached and enclosed. You shall then know you must immediately appoint me an attorney to file the necessary federal petitions for writs to restore my Constitutional Rights. How you respond to this letter will determine if you truly are an honorable person. I am so frustrated with criminal behavior out of judges I pray for you.

I would like to tell you the background of this case. I am an attorney who was admitted to practice law in 1991. I have been temporarily suspended since March, 1997. My suspension was the result of criminal activity by the Nebraska State Bar Association (NSBA). The Nebraska Supreme Court, Federal District Court for the District of Nebraska and eventually even the 8th Circuit Court of Appeals covered up the criminal behavior by the NSBA.

I really want to help the Country but the individuals involved are more concerned with protecting themselves and their friends than returning the system to what the Founding Fathers envisioned. I am quite afraid the state of Nebraska has committed treason against the U.S. I really don't think the state government in Nebraska can be saved.

Please read Chapter One of the Sworn Motion for Appointment of Attorney that I have attached hereto. I have been imprisoned in a mental hospital for nine (9) of the last thirteen (13) years. I have never harmed anyone physically, never acted aggressively toward anyone or made threats to commit a crime of violence. I am a true Christian.

I have been arrested many times yet almost never convicted. I have been charged with approximately twenty (20) crimes since March, 1997, when I publicly claimed the Nebraska Supreme Court "fixed" my disciplinary case. I pled no contest to three (3) counts of disturbing the peace in 1999 as I was engaging in civil disobedience to bring media attention to my situation. Every lawyer I have had since January, 1998, has sold me out, said ridiculous things to the media and helped the government cover up the corruption that I prove with my motion, attachments and other documents enclosed herewith.

I truly am a political prisoner because of my work as a civil rights attorney and criminal defense attorney. We must restore the system for future generations to be safe. I have committed my life to saving the United States of America from the individuals the Founding Fathers knew would come someday. Thankfully the Founding Fathers provided the tools necessary for me to do my work in an honorable fashion, such as a mostly free press. The press in Nebraska has been corrupted, which I believe is treason against the United States.

I have enclosed numerous letters, but not all the letters, I have written to Debra Gilg, Michael Heavican and Jon Bruning. All three (3) refuse to respond to my letters. Clearly there is a conspiracy among the three (3) to remain silent and let me suffer injustice. All three (3) refuse to do anything about my obviously illegal arrest. This is un-American, evil and certainly not Christian. But so far I have been helpless in getting anyone to help me. Will you please help me? Please immediately appoint me an attorney. Very serious consideration should also be given to appointing a Special Prosecutor to investigate the U.S. Attorney's office

Nobody will even respond to my correspondence, which makes me wonder if the Federal Government is intercepting my mail. Please, I ask kindly, that you respond with your thoughts about how I should proceed to fix a broken system. Please respond at the address above. Please tell me if you received my material, are going to appointment me an attorney or any steps you want me to take to get your help.

Sincerely,

Thomas R. Zakrzewski

Thomas R. Zakrzewski

P.S. Apparently Obama, Gilg, Sharp and the state of Nebraska think I am going to be a slave to the wishes of their forcefully imposed psychiatrists. These new "masters" of mine are clearly intentionally misdiagnosing me as a paranoid schizophrenic because of alleged delusions of persecution. The persecution is all too real. I have lived sixteen (16) years of it. If I have to I will eventually defect to another country if this country cannot be saved. At the current rate I will be dead at the age of fifty (50) because of forced medications that I do not need, want and cause terrible disfiguring side effects.

Complaint Against Judge Alan Brodbeck (Already Filed)

Tom Zakrzewski

**Warrantless Arrest**
**Probable Cause Determination**
IN THE COUNTY OF HOLT COUNTY, NEBRASKA

State Of Nebraska
Plaintiff

Case Number
Affidavit of Probable cause

VS.

Tom Zakrzewski DOB 04-19-1964
Defendant

Comes now the undersigned, a Law Enforcement Officer as defined by the laws of the State of Nebraska, and being first duly sworn upon the oath, deposes and states the following:
The Arrest of the above named defendant occurred on 05-06-2009 at 09:46 hrs for the offense of Disturbing the Peace in Holt County, Nebraska.

FACTS:
On 05-06-2009 at approximately 09:40 I, Larry Wanamaker was the police department when I received a phone call from Deb Hilker stating Tom Zakrzewski was at Tom Herzog's law office creating a disturbance. Hilker stated Zakrzewski came in to get a copy of a document and started calling Herzog a child molester and saying how corrupt the government was. After hanging up the phone I proceeded to Herzog's law office. Upon arrival I met with Herzog, Kim Schweers, Melanie Price, Mark Terjal and Hilker. I was told Zakrzewski was gone and walked north bound on the sidewalk. I advised Herzog, Zakrzewski was asked to leave the police department earlier when he came in and was disturbing the staff trying to work. I advised Herzog this sort of action has been occurring for approximately 2-3 weeks at the police department. Officer Clyde and Officer Herbolsheimer located Zakrzewski walking up to the courthouse. Zakrzewski was advised why he was being placed under arrest. Zakrzewski was then placed in handcuffs and walked up to the Holt County Jail. Zakrzewski was incarcerated for disturbing the peace.

There are lies in this affidavit. Chief Wannamaker is the one who arrested me and did threaten to kill me. Also, if I did this at the police station why wasn't I arrested. T. Z

Signature of Officer

Subscribed and sworn before me this 6th day of May 2009

ROBERT L. GREINER
MY COMMISSION EXPIRES
February 7, 2013

Robert L. Greiner
(~~Judge/clerk Magistrate~~/ Notary Public)

COPY
2nd one sent

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 97-4042 and 97-9017

In Re: Thomas R. Zakrzewski, Appellant.

* Appeals from the United States
* District Court for the
* District of Nebraska.
*
* **[UNPUBLISHED]**

Submitted: April 14, 1998
Filed: July 27, 1998

Before RICHARD S. ARNOLD,* Chief Judge, LAY and LOKEN, Circuit Judges.

PER CURIAM.

Thomas R. Zakrzewski served as attorney for his brother in acrimonious divorce and related proceedings. For additional background, see Zakrzewski v. Fox, 87 F.3d 1011 (8th Cir. 1996). The attorney for his brother's ex-wife filed a complaint with the Nebraska State Bar Association alleging that Zakrzewski violated Disciplinary Rules 7-102(A)(1) and (5) by signing an affidavit falsely accusing the complainant of acting in concert with his client to file a false and malicious claim of child abuse against Zakrzewski's brother. The Committee on Inquiry of the Third Disciplinary District filed formal charges with the Nebraska Supreme Court. Following a hearing, a referee concluded that Zakrzewski did violate the disciplinary rules. The Nebraska Supreme

*The Honorable Richard S. Arnold stepped down as Chief Judge at the close of business on April 17, 1998. He has been succeeded by the Honorable Pasco M. Bowman, II.

Court agreed that "the evidence clearly and convincingly establishes that respondent's actions in signing the affidavit were violative of DR 7-102(A)(1) and (5)." That Court suspended Zakrzewski from the practice of law in Nebraska for eighteen months. Zakrzewski now appeals the en banc decision of the United States District Court for the District of Nebraska to suspend him from practice before the district court. We issued an order to show cause why he should not likewise be suspended from practice before this court (No. 97-9017).

Reciprocal discipline is the norm because disciplinary decisions by state courts are entitled to high respect. However, "disbarment by federal courts does not automatically flow from disbarment by state courts." Theard v. United States, 354 U.S. 278, 282 (1957). A district court "may impose reciprocal discipline unless, after an independent consideration of the record, the court finds (1) a deprivation of due process; (2) a lack of adequate proof establishing misconduct; or (3) that the imposition of reciprocal discipline would result in grave injustice." In re Attorney Discipline Matter, 98 F.3d 1082, 1087 (8th Cir. 1996). After careful review of the record, we conclude that the district court applied the proper standard in imposing reciprocal discipline, that the district court's imposition of discipline was procedurally proper, and that there was an adequate factual basis for the Nebraska Supreme Court's determination that Zakrzewski was guilty of misconduct warranting the discipline that Court imposed.

Accordingly, the judgment of the district court is affirmed. Thomas R. Zakrzewski is hereby suspended from practice before this court until further order.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

**IN THE DISTRICT COURT OF MADISON COUNTY, NEBRASKA**

| | | |
|---|---|---|
| **IN THE INTEREST OF** | ) | |
| | ) | **Case No. CI09-307 K** |
| **THOMAS R. ZAKRZEWSKI,** | ) | |
| | ) | **ORDER** |
| **ALLEGED TO BE A MENTALLY ILL DANGEROUS PERSON,** | ) | |

Now on this 19th day of April, 2010, it has been brought to the Court's attention that a document has been filed on this date by Thomas R. Zakrzewski entitled "Pro Se Sworn Motion for Appointment of Attorney an Special Prosecutor." A review of the Court file indicates that this matter was initiated as an appeal of the Seventh Judicial District Mental Health Board's decision of May 21, 2009, filed by Mr. Zakrzewski. The board's decision on that date was to terminate the previous out-patient treatment plan in favor of an in-patient treatment plan. The matter came on for appeal hearing, de novo on the record, on August 12, 2009, before this Court. On October 8, 2009, this Court denied Mr. Zakrzewski's appeal and affirmed the board's May 21, 2009 decision. Accordingly, there is no matter that is pending before this Court which would require the appointment of a substitute attorney or special prosecutor.

A review of Mr. Zakrzewski's sworn motion reveals a 21-page rambling, self-serving diatribe alleging many of the same paranoid accusations of a massive cover-up against him, involving the present and past two presidents of the United States, which lead to his previous commitment, and contributed to this Court's affirmation of the board's May 21, 2009 decision.

Because there is nothing pending before this Court and because this Court lacks jurisdiction to grant Mr. Zakrzewski's request, that is, "To begin the journey back to a civilized society," the Court on its accord overrules and dismisses this sworn motion in its entirety.

IT IS SO ORDERED.

BY THE COURT:

[signature]

District Judge

CERTIFICATE OF MAILING

THE UNDERSIGNED HEREBY CERTIFIES A TRUE COPY OF THE FOREGOING INSTRUMENT WAS SERVED UPON EACH OF THE ATTORNEYS OF RECORD OF ALL ADVERSE PARTIES IN THE ABOVE ENTITLED CAUSE OF ACTION, AND PARTIES NOT REPRESENTED BY COUNSEL, BY ENCLOSING THE SAME IN AN ENVELOPE ADDRESSED TO EACH SUCH PERSON AT HIS/HER RESPECTIVE ADDRESS AS DISCLOSED BY THE PLEADINGS OF RECORD HEREIN, WITH POSTAGE FULLY PAID AND BY DEPOSITING SAID ENVELOPE IN A UNITED STATES POST OFFICE DEPOSITORY IN Norfolk, NEBRASKA, ON THE 23rd DAY OF April, 2010.

[signature]

# IN THE DISTRICT COURT OF HOLT COUNTY, NEBRASKA

**IN THE MATTER OF THE APPOINTMENT OF A SPECIAL HOLT COUNTY ATTORNEY**

Case No. CI 04-194

**ORDER ON MOTIONS**

HOLT COUNTY, NEBRASKA FILED SS

MAY - 3 2010

JUNIOR YOUNG 4:25 pm
CLERK OF THE DISTRICT COURT
KAREN SPERLING - DEPUTY

**DATE OF HEARING:** No hearing held.

**MOVING PARTY:** Thomas Zakrzeweski.

**MOTION FILED:** 1) Motion to remove special prosecutor; and

2) Motion for appointment of an attorney.

**FINDINGS:** The court originally appointed a special prosecutor on November 18, 2004. On that same date an order was entered pursuant to §83-1025 transferring the matter to the Mental Health Board of the 7th Judicial District. All subsequent matters have been heard by the Mental Health Board of the 7th Judicial District or the District Court of Madison County. This court does not have jurisdiction to grant the relief requested.

**ORDER:** The court lacks jurisdiction to grant the relief requested.

Signed in chambers at **O'Neill**, Nebraska, on **May 3, 2010**;
DEEMED ENTERED upon file stamp date by court clerk.
If checked, the court clerk shall:

[X] Mail a copy of this order to all counsel of record and any pro se parties.
Done on May 3, 2010 by KS.

[ ] If not already done, immediately transcribe trial docket entry dictated in open court.
Done on ______, 20___ by ______.

[X] Note the decision on the trial docket as: [date of filing] Signed "Order On motions" entered
Done on May 3, 2010 by KS.

BY THE COURT:

Mark Kozisek, District Judge

Mailed to:
Tom Zakrzewski
2231 Lincoln Road
Bellevue, Ne 68005



IN THE DISTRICT COURT OF MADISON COUNTY, NEBRASKA

IN THE INTEREST OF )
) Case No. CI 09-307 K
THOMAS R. ZAKRZEWSKI, )
) ORDER
Alleged to be a Mentally Ill )
And Dangerous Person. )

FILED
10:02 A.M. ________ P.M.
MAY 04 2010
IN DISTRICT COURT OF
MADISON COUNTY, NEBR.
MARJORIE SCHAFFER, CLERK

This matter came on before the Court on the applicant's request for court-appointed counsel. The Court, being duly advised in the premises, hereby denies the defendant's request for the reason the applicant failed to provide a sufficient basis for said request.

DATED this 4th day of May, 2010.

BY THE COURT:

District Judge

q. Smith
T. Zakrzewski

